## THOS. B. SYKES, *et al.* v. SALLIE A. C. SYKES.

1. DOWER—WIDOWS RIGHT TO DOWER IN REALTY OCCUPIED BY TENANT UNDER LEASE.—Sykes, the decedent, died, seized of lands which. were, at the time of his death, occupied by his son as a tenant under a contract of lease or partnership agreement, so far as related to the proceeds of the farm, the net proceeds of which Sykes was to receive one-half. The deceased had parted, temporarily, with the actual possession of the lands by the lease of a term of years, yet he died "siezed" of the lands in controversy. The dower act of 1857 restricted the widow's right to dower in the estate of her deceased husband, to the lands of which the husband died *seized and possessed,* her dower interest being " one third " of all the lands of which her husband died *seized and possessed.* In the construction of this statute, the claim of the widow should be no further abridged than is clearly and plainly provided for by the terms of the statute. Jiggetts & Jiggetts, 40 Miss., 719. Hinds v. Pugh, 48 Miss., 272.

2. SAME—HOW DOWER MAY BE CUT OFF—Dower may be cut off, first, by a joinder of the wife in a conveyance by the husband, acknowledged by her on a privy examination apart from him, or a separate deed of relinqushment; second, by a conveyance of the husband, in good faith, for a valuable consideration. Revised Code 1857, art. 23, p. 313.

3. SAME—CONVEYANCE—SEIZIN.—The "conveyance" meant must be of the freehold, such as would destroy the *seizin* of the husband. If, therefore, the husband carved out of this estate in fee, a term of years, which is but a chattel interest, although the term was outstanding and undetermined at the time of his death, this in no wise broke up the *seizin,* for the possession of the tenant would be his possession, and as to such lands he would die *seized.* The wife has a claim, of the same extent, to the lands and tenements of which the husband had *seizin* at the time of his death, which the common law accorded to her. The statute confers upon the husband a restricted power of alienation. 4 Ire. Eq. Rep., 278-9 ; 1 Scribner, Dower, 589 ; 44 Geo., 328, 357.

4. SAME—POSSESSION—"One-third of the lands of which the husband died possessed," the word "possessed" is construed to be synonomous with "seized." Stewart v. Stewart, 5 Conn., 320. Whether the words be "possessed" or "seized and possessed," they have received the same interpretation, viz : seizin of an estate of inheritance in the husband.

5. SAME—ARTICLES OF PARTNERSHIP—The general rule prevailing in the United States, resting, as we think, upon the soundest reason, is that real estate bought with partnership funds, or put in as capital for the use of the joint business, such as manufacturing, is, as between the partners and their joint creditors, impressed with the character of personalty, but after the debts are paid, the partners are tenants in common. The stipulation between Sykes and his son, was not such an alienation of the land as would defeat the dower. The partnership did not extend to, or affect the " seizin."

6. SAME—SAME—An estate for years, is no obstacle to a claim for dower ; in such case the widow is to be endowed of the reversion, and a proportional part of the rent. 1 Scrib. Dow., 361, § 6 ; Herbert v. Wren, 7 Cranch., 380-1 ; 1 Hill on Real Property, 134. The partnership made by Sykes should not be disturbed, but the widow should be endowed of one third of her husband's interest in the partnership, until its termination, and then take possession of her dower interest in the realty.

Appeal from the chancery court of Monroe county, Hon. O. H. Whitfield, Chancellor.

The opinion of the court contains a sufficient statement of the facts in the case.

The following is assigned for error:

The granting dower to the appellee, in certain town lots and a plantation which W. A. Sykes had leased and disposed of in his life time, said dower being allowed in opposition to said disposition.

*Harris & George*, for appellants:

The appellee, as the widow of W. A. Sykes, filed her petition in the chancery court of Monroe county, for dower in the real estate of said W. A. Sykes.

She set out the land in which dower is claimed, consisting of certain town lots, lands in the county, and a plantation, known as the fourteenth section place.

She stated that the dwelling house was very large and commodious, and was on a lot in Aberdeen, and that to set it off to her would be a manifest injustice to the heirs of said W. A. Sykes.

T. B. Sykes, one of the executors, and also an heir of said W. A. Sykes, answers:

1. That as to said plantation, that on the 24th of February, 1869, he and the said intestate entered into articles of partnership, under their hands and seals, to cultivate in partnership said plantation for eleven years, from the 1st of January, 1867. This contract is made an exhibit, as well as substantially set out in the answer, and is in effect as follows:

It provides for a planting partnership between said W. A. Sykes, and respondent, (appellee,) under the name and style of Sykes & Son. William A. Sykes, agrees to furnish the above mentioned land, (the fourteenth section plantation,) together with the implements and appurtenances in consideration of the personal services and attention of said Thos. B. Sykes, and it then makes some provision for supplying the fami-

lies of the two partners with corn meal, etc., raised on the place, which, however, was to end with the death of said W. A. Sykes. Provides that the expenses and losses shall be borne equally. That improvements made on the place should be paid for by the partners jointly, but at the end of the partnership, these improvements were to be valued, and one-half of their value paid to Thos. B. Sykes. Books were to be kept by Thos. B. Sykes, and yearly settlements made.

That if W. A. Sykes, the owner of the land, should die before the expiration of the term, (January 1, 1878,) the said Thos. B. Sykes, was to continue to manage and cultivate the plantation to the end of said term, in accordance with the articles, and should make annual settlements with the executors and administrators of said William A. Sykes. That in case of the death of Thos. B. Sykes, the partnership should cease with the end of the year in which that event should happen.

W. A. Sykes died in January, 1873.

The answer also sets up, that certain lots had been rented in Aberdeen, by intestate, for a year, and that he had taken the notes of the lessees therefor, and these notes are made exhibits.

The answer insisted that as to said plantation, the said petitioner was entitled to be endowed as follows: To one-third for life, of the same, to commence at the expiration of said partnership, and in the meantime she should be entitled to a child's part of one-half the profits of the same, being the share which would go to said intestate under said articles of partnership.

The answer stated that said T. B. Sykes, was then, and was also, at the death of said W. A. Sykes, in possession of said plantation under said articles.

As to the lots in Aberdeen, rented for the year, the answer insisted that she was entitled to dower in one-third of the same, but to commence only after the leases expired, and that she was entitled to a child's part of the notes taken for the rent. There was one lot leased for three years, ending

1st January, 1874, and the same claim was made as to that.

The answer was filed at the return term of the citation, and set down for hearing by complainant, and is, therefore, taken as true. There was no evidence other than the answer and exhibits.

The question thus presented is, whether the widow is entitled to be endowed of the lands of which her husband died seized, in opposition to a valid lease or other disposition made of them by the husband for a valuable consideration and in good faith.

The court in its decree disallowed this view set up by the respondent, and decreed dower in the whole to commence at once, and ordered an account to be stated of the rents of the town lots for the present year (leased by intestate), and also an account of the rents of the plantation for the present year; reserving all other questions till the coming in of the report. Therefore, Thomas B. Sykes, one of the executors, also an heir, and also the co-partner of his father in the plantation, appealed.

The foregoing statement shows that the main question for determination is as to the true construction of the act of 1871. This act, Code of 1871, § 1281, is an exact copy of the act of 1857 (Code of 1857, p. 467, art. 162). The language is that the widow shall be entitled to dower in "one-third part of all the lands, tenements or hereditaments of which her husband died seized and possessed, or which he had before conveyed otherwise than in good faith and for a valuable consideration, and whereof said widow had not relinquished her right of dower."

The construction put on this statute by the court below is this, that no disposition made by the husband in his life time, though in good faith, and for a valuable consideration, will prevent the wife's right of dower from attaching so as to defeat such disposition, unless the disposition was made by a technical conveyance and operated to destroy the seizin and possession of the husband; and that any conveyance, for a

term less than the freehold whereby the reversion is left in the husband, would necessarily be inoperative to defeat the wife's dower, because, in that case, the husband would die seized and possessed of the land, for the possession and seizin of the tenant would be the seizin and possession of the husband.

We think that this position is utterly untenable. In construing a statute we must look to the old law, the mischief under it, and the remedy intended by the new statute, and adopt such interpretation as will suppress this mischief and advance the remedy. The old law gave the wife dower after the husband's death in all lands of which he was seized during the coverture, and on which she had not relinquished dower. Or, in other words, the husband's right to make any disposition of his freehold was clogged and encumbered by the wife's right of dower, so that any disposition which he might make of his lands during his life time, was subject to be defeated, on his death, by the wife's claim of dower. This was deemed an unnecessary and unwise fetter upon the husband's right of alienation, when that alienation was made in good faith (not for the purpose of defeating the wife's right) and for a valuable consideration. The wife's interest in the consideration received, being held a just and fair equivalent for her interest in the land aliened.

It is now insisted, that the unrestricted right of alienation, and the consequent right of the alienee to protection, was intended to be granted only in cases where the alienation was of the husband's whole interest in the freehold, and then only when a strict technical conveyance had been executed. This construction is too narrow; it does not suppress the mischief nor advance the remedy. Alienees who have paid for their land in good faith, and who have yet received no technical conveyance, are by this construction still subject to be defeated by the wife's claim for dower. And so alienees for a term of years, the reversion still being in the husband, although they may have a technical convey-

ance, are also liable to lose their estates ; and the husband's unrestricted right of alienation in good faith and for a valuable consideration is restricted to alienations which includes his whole interest, and when he has actually made a deed.

The manifest object of the statute, was to give the husband an unrestricted right of alienation of his land, except only, that it be done in good faith and for a valuable consideration. The wife's interest in the land during the husband's life, was inchoate, imperfect, and contingent upon her survivorship. In nearly every case, the wife relinquished when so requested by the husband, and it rarely happened that the alienee's right was ever encumbered with the wife's dower, except in cases where, though there had been a full assent of the wife to the sale, and she had as a member of the family, received the full benefit of the consideration paid; yet the officer taking the acknowledgment had defectively certified it. See on this subject, 4 Kent Com., 41 (marg. page,) where it is said: "The claim of dower attaching upon all lands whereof the husband was seized at any time during the coverture, is a severe, dormant encumbrance upon the use and circulation of real property. In fact it is of little or no use unless the husband dies seized ; for it is, in practice almost universally extinguished by the act of the wife in concurrence with the husband, upon sales and mortgages of real estate. The existence of the title only serves to increase the expense and multiply the forms of alienation ; and consequently in several of the States the title to dower has been restricted down to the lands whereof the husband died seized.

With this for the object of the statute, it would require very plain words in it to authorize an interpretation, that the husband's power of alienation only extended to cases where he had made a deed and conveyed a freehold. There are no such words in the statute.

It is admitted that if the husband made a deed or conveyed a freehold interest, that the wife's dower would not

attach. The restriction on the power to alien is intended for the wife's benefit and protection. Would it not be a very strange way to protect the wife, to allow the husband to dispose of his whole estate, and thereby cut out her dower entirely, and yet would prevent him from disposing of it for a year or ten years, whereby her right to dower in, the reversion would be secured?

Such a construction, in cases where the interests of the two are antagonistic, and their relations not harmonious, would force the husband to convey the fee in order to get rid of a restraint, which would exist in a mere leasing for a term of years; and it would put our law on this subject in this anomalous condition, that the husband would have full power in disregard of the wife's interest to alien in fee, and yet would be powerless to convey or alien for a term of years or for one year, in the ordinary course of business for making the land profitable, because such leasing would interfere with the wife's right to dower, although her right to dower would exist in full, after the expiration of the term. Under this view the greater right would be allowed, and yet the smaller would be excluded. It would certainly be an anomaly in law, that a party could alien in fee in defiance of the right of another, and yet could not out of tenderness to such right, alien for a year or six months. This reverses all the rules of law on the subject of restrictions upon alienations, out of respect for the rights of others; these rules always place the restrictions upon the larger estate aliened and not on the smaller.

We deem it impossible, that the court shall put that construction upon the statute.

But it is said there must be a technical conveyance, a deed, signed, sealed and delivered, containing operative words to convey the legal title. This position is equally untenable. The object of the statute is not to fix and determine the forms by which estates may be aliened; but to remove a restriction theretofore existing on the husband's power of alienation. And is it not perfectly clear, that it is

utterly immaterial to the wife, whether the alienation shall be by a deed technically correct, or by any other mode valid in law or equity. Is it true that an absolute conveyance by the vendor bars the wife's dower, and yet a valid executory agreement to convey, fully complied with by the vendee, has no such effect? And if so, why? Is there any right of the wife which is affected by the one injuriously, and is yet not affected by the other? Are the rights of a purchaser in good faith, and for a valuable consideration fully paid, to be defeated by the mere failure or wrongful refusal of the vendor to convey, and his death before a chancery court can force him to convey? A construction which would bring about such a result will not be adopted.

The word "convey" is not one of the technical words, necessary to be used in any kind of a deed; it is not one of the operative words used in a deed, feoffment, gift, or bargain, and sale; and the word "conveyance" applies equally to all contracts by which any interest in land passes, or is conveyed from one to another.

The intention of the legislature, must govern, and that intention is plain here: To confine the wife's right of dower, to the real estate of which the husband was owner at the time of his death, (including alienations not made in good faith and for value,) and subject to all the charges, which, for a valuable consideration, and in good faith, he has made upon it. And under this construction, a mortgage by the husband, of the estate for a valuable consideration, has been held superior to the wife's dower. At common law, if the husband made a lease for life and then married, the wife was not endowable, unless the lease terminated during coverture, because there was a want of seizin; but if the lease was for a term of years, then the wife was endowable, but with a *cesser* of execution, till the end of the term. This is exactly our position. The seizin of the husband in the reversion, gives the wife dower, but it is subject to the encumbrance of the lease, and she takes with a *cesser* till that ends.

There can be no doubt we think, that the wife is not entitled to defeat the lease made by the husband. But it was insisted that the agreement or articles of partnership, is no conveyance or alienation of the land, and that as to the plantation, the dower commenced with the husband's death.

Deeds and every other contract with respect to land, must be construed according to the intention of the parties; no particular words or phrases, are necessary to convey or pass an interest in land. If the words used show a clear intent to convey or pass an interest in land, and also show, the extent and nature of that interest; this is all that is required; and it is utterly immaterial under the statute, whether the title to the land be actually aliened, or whether the interest aliened be a mere charge, or encumbrance of the husband's title by a right granted to another.

In this case the agreement is, that the intestate "furnishes the plantation, together with the improvements and appurtenances thereto belonging, in consideration of the personal service and attention." The covenant is also, that the land shall be so used for eleven years, notwithstanding the death of W. A. Sykes.

There is no doubt, that partners may provide, in the articles of partnership, that if one die before the term is terminated, that the other may carry on the business with the capital invested, for the benefit of the survivor and of the representatives of the deceased; or that the decedent shall have the right to appoint a new partner to represent his interests. See Burnett v. Mandeville, 2 H., 560.

And in either case, the capital of the firm, as well as the interest of the decedent, as of the survivor, will be liable for the contracts of the survivor. In general it is held, that, unless the will of the deceased show to the contrary very clearly, only the capital of the deceased, vested in the firm, shall be liable. 2. H., *supra*. But in every case, it is held, that such a provision devotes the capital put in the firm by the deceased, to the subsequent business, to the end of the term. And really that position has never been ques-

tioned or doubted. Controversies have arisen as to whether the general estate of the deceased would be liable to these subsequent contracts, and controversies have also arisen, as to the liability of the personal representatives of the deceased, who have been admitted in his stead, but it has never been disputed so far as I know, that a partner, might by contract with his associate, devote his capital to the business for a limited time, notwithstanding his death. To deny him such right would be to deprive him of the *jus disponendi* of his estate.

I don't care whether you call the partnership after the death of one, a new partnership or not—as Parsons insists it should be—for that is not the question. For whether it be new or not, the capital of the deceased partner remains in the firm, and subject to its control. In every case this is admitted.

This, then, being established, that the contract of W. A. Sykes, to allow the land to remain in the firm and under the management of his son, who was to be half owner in the proceeds, being a valid one as against the heirs of W. A. Sykes, what prevents it, from being binding on the widow? It is a separation of the land, a conveyance of it if you please, in good faith, and for a valuable consideration, to-wit: The engagement of the other side; and such a disposition it has been shown, bars dower for the term the disposition lasts.

This construction is manifestly in harmony with the object and intent of the statute, to relieve *bona fide* alienations for value, from the incumbrance of the wife's dower; and besides is manifestly just, and even essential to the proper enjoyment and management of landed property in Mississippi.

The decree disregards the articles of partnership entirely, and directs rents to be paid for the present year.

It may be proper to refer briefly to some of the principles regulating partnerships in realty, especially, as it is desired by all the parties, that a decision shall be made on all the points in controversy.

It is unneccessary for me to show that the land for the term of eleven years, as provided for in the articles of partnership, was really partnership assets, *i. e.* personalty instead of realty, for if we have shown, as we think we have, that the arrangement made in the articles of partnership was a valid disposition of the land for that term, whether it remained realty, or personalty, Thomas B. Sykes' rights, under that disposition, cannot be interfered with, *i. e.* his right to occupy and work the place on the terms agreed on for the time specified in the articles.

But it would be made still clearer, if possible, if we can show, that the land was, for the term actually mere partnership property.

And here in the outset, we can bring this question without the general rules on that subject relating to freehold estates.

The articles only provide for the disposition of the lands for partnership purposes, for a term of years ; this term is personalty ; and therefore partnership property. See Collyer on Partn., § 136.

That this lease was to be considered as a partnership lease, seems very clear. If it had been conveyed to the partnership, by a third person, there could be no doubt about it ; and there is no difference, that the conveyance was made by one of the partners ; he had a right to make such a contract with his associate, and there is nothing in the nature of his connection with the firm that would make the rule different.

It comes also under the rule, which would make even freehold estates partnership property, during the term of the partnership, and until it is wound up.

We think that rule, the better one with reference to freehold estates, which makes them personalty, when they are partnership stock, only so far as it is necessary to protect the partners and their creditors ; and, therefore, that what remains after this purpose is accomplished, shall be considered as realty, out of which the widow is endowable.

Real estate brought into a partnership by one of the partners, under an agreement that during the partnership it shall be used for partnership purposes—is personal estate—but only as far as may be necessary for the partnership purposes.

This is the most restricted rule laid down by the authorities, but it is sufficient for our purpose here. See Collyer on Partn., § 154.

Judge Sharkey, in Markham v. Merrett, 7 H., 444, (near bottom of the page,) lays down the rule thus: "Where land is held by a firm, and is essential to the objects and purposes of the partnership, then it is regarded as a part of the joint stock, and will be regarded in equity as a chattel."

Certainly this land was essential to the object of the partnership, for it was to be cultivated, and that was the sole object of the partnership.

But it is insisted that the widow is endowable out of the rents as realty, if not entitled to dower in the land during the terms of disposition. This argument is made, both with reference to the rents *eo. nomine,* and also with reference to the profits arising out of the partnership.

There were three kinds of rent at common law—rent service, rent charge, and rent seck. Rent service is "where the tenant holdeth his land of his lord by fealty and certain rent, or by homage fealty and certain rent, or by other services and certain rent." 1 Co. Lit. § 213, marg. page 442, Thomas' edition. And Coke says: "It is called rent service because it has some corporal service incident unto it, which, at least, is fealty." "And this was the only kind of rent originally known to the common law, and a right of distress was inseperably incident to it as long as it was payable to the lord, who was entitled to fealty, and it was called rent service because it was given as a compensation for the military or other services to which the land was originally liable; and where a rent was granted out of lands by deed, the grantee had no power to distrain for it, because there was no fealty annexed to such a grant." Note 4, 7 Co. Lit., p. 443.

There is and can be no such thing as rent service in this State, for there is no homage, no fealty, no military services to be compensated, and we may as well dismiss that kind from consideration. Moreover, it must be remembered that rent service (which was always the kind of rent when the reversion was in the lord,) was never in any case a personal demand against the tenant; the lord's only remedy was by distress on the land; he had no personal remedy against the tenant. Note to 1 Co. Litt., p. 450.

A rent seck, or dry rent, was where there was no right of distress, and it was always personalty. See Gilbert on Distress, p. 6. A rent charge is created in two ways but always by deed.

1. When a man demised lands conveying his whole interest in fee, and by the same deed reserves to himself and to his heirs a certain rent, and if that rent be behind, that it shall be lawful for him and his heirs to distrain, this is a rent charge, because such lands or tenements are charged with such distress by force of the writing only, and not of common right. 1 Co. Litt. p. 445.

2. So if a man seized of certain land, by deed, grant a yearly rent, issuing out of the land (which he owns) with a clause of distress, that is a rent charge also. And in both these instances, if no clause of distress be inserted in the deed, it is rent seck, and there is no right of distress, *and the rent is personalty.* It will be observed that a rent charge can only be created by deed, and that the power of distress must be a part of the contract. *The right to distrain on the land* was the thing which made the rent a hereditament, and when this was expressly contracted for by deed, then it was a contract for *an interest in the land* and for the realty.

That this contract for the right of distress had this effect, is very evident from the following consideration: The grantee, or reservee of the rent, (in case of rent charge) had his choice of remedies for his rent. He could distrain, as the contract allowed, or he might elect to bring his writ of annuity, but

he could not have both.  If he brought his writ of annuity then the land was discharged of the rent, and the rent became personalty—that is; a mere personal demand against the grantor of the rent, or the tenant.  See 1 Co. Litt. 450. And this election so completely made the rent personalty that if it were made by the heir, before dower assigned, it cut out the widow's right of dower in the rent.  1 Roper on Property (husband and wife) marg. page 344.  And so, if the grantee of the rent elected to proceed by distress, this charged the land, and discharged the person of the grantor or tenant.

And here it may be as well to note the difference between rent service and rent charge in this respect.  In rent service (to which distress was incident) there was no personal liability on the part of the tenant, the lord's sole remedy was by distress.  See note to 1 Co. Litt. p. 450.  In all cases rent service was realty, and went to the heir, or if the reversion were granted then to the grantee.  It was essentially realty and out of it the widow was endowable.  Distress in case of rent service was an amelioration of the feudal law, which substituted a right to distrain on the land in place of the right to seize the feud, for non-performance of the services. See Gilbert on Distress, p. 5.

In case of rent charge, she was endowable unless the heir had elected to make it personalty by resorting to her writ of annuity.  In no other kinds of rent was the widow endowable; and she was endowable of those, only as above stated, and for the reasons above set forth.  We might end the argument here, as in this case there is no rent charge, and there can be no rent service in this State.  She is endowable out of these and these alone,  But it may be said that the landlord has a statutory right of distress or attachment, and this makes rent, realty, and, therefore, that the widow shall be endowable out of it,  This argument is fallacious, And here let it be noted that there is no law in this State which makes it illegal to create a rent charge,  A man may

by deed grant or reserve a rent, with a clause allowing the grantee or receivee to distrain for arrears, and there is no law to prevent it.  When the grantee does not take this security, but relies only on the statutory remedy of distress, he is not the owner of a rent charge, which, as before stated, can only be created by deed, and by express contract, reserving the right of distress.

The right of distress · at common law for rent charge or rent service is very different from the statute.  At common law it was a personal right to be exercised by the landlord, or grantee of the rent, or his bailiff, and it was to be exercised only *on the land*, and when the distress was taken it was not saleable, so as to raise money to pay the rent, but was held as a pledge.  It was a right, in case of rent service, for the lord to go upon his own land, in possession of his vassal, and seize and hold what he could find, in order to compel payment; and in case of a rent charge it may be a right, by the terms of the contract, in the grantee, to enter upon the land, and *there* make the distress.  And if the outer door were open, the grantee might break open the others.  It was the right of the *grantee to enter upon the land and distrain, which by the terms of the contract was secured to him*, that made the rent charge, realty, for, as before shown, when this right was abandoned by election to sue out a writ of annuity, the rent became a mere personal demand, and, therefore, only personalty.

By statute the landlord, or grantee of the rent, has no personal power of distress.  He has a mere right to apply to a magistrate for a writ of attachment against the goods of the defendant generally.  The sheriff goes on the premises not in virtue of any interest in the land, but as he does in every other case where he has a writ to execute.  He seizes property and sells it to satisfy the rent.  The landlord having no more rights and powers over the land than has any plaintiff in execution.  And it would be just as logical and reasonable to say, that a plaintiff in any execution has an interest in the lands of his debtor, and therefore that the debt was

realty, as to say that the plaintiff in an attachment for rent has such right. The idea that a debt or demand is realty, because it may be enforced by personal process on the land of the debtor, would certainly be a novel one. And yet there is no more foundation for the assertion, that rent is realty because it may be enforced by a statutory attachment than there is for the other. The High court said, in Marye v. Dyche, 42 M. 378, "The whole policy of the law respecting distresses for rent has been changed by our statute, and a distress for that purpose is now no more than a summary method of seizing, under a writ of attachment, the tenant's property, and selling the same to satisfy the rent he owes." This is nothing more than is allowed other creditors, under certain named circumstances, *i. e.*, a right to seize under judicial process his debtor's goods to pay his debt. Now, as has been shown, the realty-nature of the debt having arisen alone from the personal right of distress existing in the landlord, either as lord of the reversion and entitled to fealty, or by express contract by deed in case of a rent charge, whereby the *land was charged* with the distress; and as no such right exists here, but only a right to resort to judicial proceedings, how can it be said that the rent in this case is realty?

The rent in Mississippi is a personal liability, and the right to sue out a writ of distress is a mere remedy provided by *statute to enforce the liability.* It is in the beginning a personal demand against the tenant, and remains so throughout. The election to sue out an attachment does not release the personal liability. The attachment for rent is a mere remedy to enforce it.

In this case, the rent debt is evidenced by promissory notes, negotiable in the market. Are these promissory notes realty? If so, let us have the explanation of how this remarkable result is produced. They would be rent-seck at common law—there is no grant of a right to enter upon the land and make the distress, so as to make them a rent charge—*on the land.*

I do not deny, but admit, that a rent charge, i. e., a rent charged on the land, may by deed be created in this State; and when that is done, it is realty, and the widow is endowable out of it.

Again, the statute giving the remedy of attachment for rent gives it in so many words, to the executors and administrators of the landlord. This shows that the demand is personal, and the rent personalty. If the demand were realty, the heir would sue; and the remedy is also given against the executors of the tenant. If the rent were realty the demand would be against the heir of the tenant. I deem this conclusive of the matter.

As to the point about uncertainty in the partnership articles, it is so utterly untenable, that it is only deemed necessary to cite one or two authorities. It is just like a conveyance of " Black acre," and you must refer to parol to ascertain what property is embraced in that description. So if the conveyance had been of sec. 1, t. 20, r. 12, of ———— county, we would have to refer to parol evidence to identify the land embraced in that description. See Woods v. Sassier, 4 Gray, 322; Gervish v. Torver, 3 Gray, 82; Sargeant v. Adams, 3 Gray, 72; 1 Greenl. Ev., § 287.

*Houston & Reynolds,* for appellee:

1. At common law, the widow is entitled to dower in one-third of the lands of which her husband was seized at any time during the coverture. When the husband is seized in fee, an intervening estate for years, whether created before or after marriage, interposes no bar to a claim for dower. If the estate for years is in existence at the time of the coverture, or is created during coverture by the joint deed of the husband and wife, the widow, if she survive the husband, is endowed of one-third part of the reversion by metes and bounds, but, the writ of dower shall not issue until after the termination of the term for years, and also, of one-third part of the rents, issues, and profits accruing from the term; if the estate for years is created during coverture,

the wife not joining in the conveyance, the writ of dower shall issue at once. Stoughton v. Leigh, 1 Launton, 409; 1 Scribner, 361; 2 Scribner, 660; Herbert v. Wren, 7 Cranch, 370; Boyd v. Hunter, 44 Ala.

Tested by the rules of the common law, the husband of appellee having been seized in fee of the lands during coverture, a subsequent lease of them by the husband alone, would not affect her rights of dower. In such a case, the widow would be endowed, not of one-third of the rents, issues and profits, but by metes and bounds, of one-third of the land, and the writ of dower would issue at once.

2. The statute of Mississippi (sec. 218), gives to the widow one-third of the lands of which the husband " died seized and possessed," or which he "*had conveyed during coverture* otherwise than in good faith and for a valuable consideration." The statute gives dower, first, when the husband dies seized and possessed; second, when he has conveyed *so as to divest his seizin*, during coverture, otherwise than in good faith and for a valuable consideration.

1. Was the husband of appellee seized and possessed of the lands in controversy at the time of his death?

We will concede, in this portion of our argument, that the effect of the partnership articles between Dr. Wm. A. Sykes, the husband of appellee, and Thomas B. Sykes, the appellant, was, to lease the lands to the firm of Sykes & Son, for the period of eleven years. It is not controverted that Wm. A. Sykes was the owner in fee, and that the contract of partnership was made during coverture. We will admit, also, that by the partnership articles the death of Wm. A. Sykes did not dissolve the partnership. The terms " seized and possessed ". are technical. The Supreme Court of Georgia, in defining them, says: " By the terms ' seized and possessed,' is simply meant, ' has the title,' " the owner of the freehold; and such is the common acceptation of their meaning. Slaughter v. Collins, 44 Georgia, 323; 15 Georgia, 102; Bouvier's L. Dic., 503; Apple v. Apple, 1 Head, 351–2; Harrell v. Harrell, 4 Cold, 380.

Suppose A, seized of an estate of freehold, in certain lands, conveys to B, an estate for years. B's term is a mere chattel interest, and descends not to his heirs, but to his personal representatives. B, is not seized of the land, but the seizin is in A, the owner of the freehold. In Ware v. Washington, 6 S. & M., 740, it was held that where the husband had an estate in lands for ninety years, that, at his death, his widow was not entitled to dower, because the husband was not *seized;* that there could be no seizin of a chattel interest in lands; that the seizin was in the owner of the freehold.

At common law, if A, owner in fee, conveys an estate for years to B, and during the existence of the term marries and before its termination dies, the widow of A, would be entitled to dower, because A, though the estate for years existed before, during and after the coverture, was *seized* of the lands, the creation of the term did not divest the seizin of the owner of the freehold. 1 Scribner, 361 ; 1 Launton, 409. In the case supposed, the widow would be endowed of the rents during the term, and of the reversion by metes and bounds, and for the reason that at the time her inchoate right of dower attached, her husband's estate was burdened with the term for years.

Now, who was seized of the lands in controversy at the time of the death of the husband of appellee? Not Sykes & Son, the pretended lessees for the period of eleven years, because theirs is a chattel interest, and there can be no seizin of a chattel. The seizin must be in some one—it cannot be in abeyance. It must be, if not in the lessees, Sykes & Son, in the husband of appellee, the owner of the fee. But if the seizin was in the husband at the time of his death, as it was, his widow under the statute is entitled to dower, and to one-third part of the land by metes and bounds.

But it may be contended that the word "possessed" has some force and significance in the statute, and that the hus-

band must not only die seized, but possessed, in order to give his widow the right of dower. The Supreme Court of Connecticut, in construing a similar statute, decides that " seized and possessed " are synonymous. Stewart v. Same, 5 Conn., 320; Stedman v. Fortner, 5 Conn., 462. Let us give to " possessed " its technical definition: "The enjoyment of a thing which a man holds by himself or another, who keeps or exercises it in his own name." " Possession may be enjoyed by the proprietor of the thing, or by another for him; thus, the proprietor of a house possesses it by his tenant." Bouvier L. Dic., 337, § 1, 9.

The husband of appellee was in possession of the lands by his tenants. He was in the actual possession, being a partner in the firm to which, it is contended, they were leased. But an actual possession of the lands is not required. Take wild and uncultivated lands, take lands to which the husband has the title, and which are, at the time of his death, in the adverse possession of another. In such cases, though the husband is not in the actual possession at the time of his death, his widow will be entitled to dower. Our conclusion is, that the husband of appellee died seized and possessed of the lands, and that under the first clause of the statute, his widow was entitled to dower in one-third by metes and bounds.

2. But it is contended that under the last clause of the statute, as a lease is a conveyance, and as the lands were leased at the husband's death, appellee is not entitled to dower.

We admit that a lease is a conveyance, yet we insist that it is not such a conveyance as is contemplated by the statute.

The first clause of the statute gives dower when the husband dies " seized and possessed." Now, if we construe the word " conveyed," in the latter clause, as including every class of conveyances, those which divest seizin as well as those which do not, it will divest rights given by the preceding clause, and make the latter clause repugnant

to the former.    To illustrate : A lease is a conveyance, but it does not divest, if for years, the seizin of the lessor, and if in construing the word " conveyed," you make it apply to such conveyance as a lease for years, or any other conveyance which does not divest seizin, you thereby deprive the widow of the right of dower in lands of which her husband died seized and possessed in certain cases; for instance, where they are leased by the husband for a term of years. Such an interpretation of the statute will violate these well settled rules of construction—that a statute must receive such a construction as will, if possible, make all its parts harmonize with each other, and the whole of it must be looked to in order to reconcile apparent repugnancies and contradictions; that one clause in a statute should *not* be so construed as to divest a right given by a preceding clause, if the latter clause be susceptible of a fair construction consistent with the right first granted. If a lease for years in existence at the death of the husband, will, under the last clause of the statute, bar dower, it limits the right given by the first clause to dower when the husband died seized and possessed.

If you construe the word " conveyed " as referring to that class of conveyances which divest the seizin of the husband, then you make all parts of the statute harmonize with each other ,and preserve to the widow, the full measure of the right granted to her by the first clause.

This construction is in harmony with the opinion of this court in Pickett v. Buckner, 45 Miss., 245.   There, the question was, whether a mortgage executed by the husband during coverture, would bar dower.   It was held, that as a mortgage was a conveyance which transfered the title of the husband, divested his seizin, it would bar dower.   In this case, it was not questioned that a mortgage was a conveyance, but the mooted point was, was it a *conveyance that divested seizin.*

A lease for years, as we have already shown, does not divest seizin, and is not such a conveyance, though made in

good faith and for a valuable consideration, as will defeat dower under our statute.

But it is insisted, that the policy of the dower act of 1857, was to remove all restrictions upon the right of the husband to alienate his lands, and that it is in conflict with this policy to construe the statute as giving dower in lands leased for years by the husband during coverture; that it restricts his right to lease for years, unless the wife will join him in the lease.

Leases for a term of years was almost unknown in Mississippi at the time of the passage of the statute of 1857. Lands were owned in fee, and usually alienated in fee. Where leased at all, it was as now, for short terms, usually for one year. And if it was the policy of the statute to remove restrictions upon the husband's right of alienation, it was alienations in fee, and not leases for years. The mischief and the remedy contemplated by the legislative mind, had no reference to leases for years.

In the early settlement of the State, lands passed repeatedly from one owner to another. One speculator sold to another, and he to a third, and he to a settler. In many instances, the conveyances were made by the husbands alone, the wives in distant States, or if in the State, did not join in the deeds or separately relinquish their dower. In 1857, these lands had greatly increased in value, and were unincumbered with the inchoate right of dower. The object of the statute of 1857, wisely conceived as we believe, was to remove this incumbrance, and bar the widow's dower in lands, which had before the statute been alienated by their husbands, then living. This was the mischief. The remedy applied was to restrict dower in land of which the husband died seized and possessed. The statute *incidentally, in its prospective operation* removed some of the restrictions upon the husband's right of alienation; yet it is manifest this was not its main purpose, but only an incident. Our construction, remedies the mischief contemplated by the statute; the other promotes and enlarges a policy, which is a mere incident flowing from the main purpose.

The first clause of the statute abridges the common law right of dower, and limits it to lands of which the husband died seized. The object of the second clause was to enlarge this abridged right, and to extend it to lands which had been conveyed by the husband so as to divest his seizin, in bad faith and without valuable consideration. The statute properly construed, should read thus: That the widow shall have dower in lands of which the husband died seized, and in addition, in those lands *conveyed so as to divest seizin*, by the husband, during coverture, and when such conveyances are made in bad faith or without a valuable consideration. The construction contended for by appellant, would make the statute read thus: That the widow shall have dower in lands of which her husband died seized, except that she shall not be entitled to dower in lands leased for a term of years by the husband during coverture, and in those conveyed.   \*   \*   \*   There is no such exception in the statute, and one will not be inserted by construction.

The extension of the word conveyed to conveyances which do not transfer title, do not divest seizin, restricts the right of dower, makes inconsistent the different clauses of the statute, narrows down to a mere incident to its main purpose, the policy of the statute, and is against the reasoning of this court in Pickett v. Buckner, 45 Miss. The construction that conveyed, applies to those conveyances which divest seizin, is a strict one, harmonizes the entire statute, remedies the mischief contemplated by it, and at the same time, enlarges the limit of that right, which is said to be favored in the law.

3. But if in error in the position that the widow is entitled to dower by metes and bounds in lands leased for years by the husband during coverture, it will not be denied that she is entitled to one-third of the entire rents. Rents, issues and profits of lands accruing after the death of the owner of the freehold, descend and are distributed as the lands themselves. 1 Washburne Real Prop., 451.

Hence, if appellee is not entitled to the allotment of her dower by metes and bounds, she is entitled to have set apart to her one-third of the rents. In the case of the profit, from the partnership, not one-third of one-half of the profits, the share of her husband under the partnership articles, but *one-third of the whole profits.*

4. We have heretofore conceded, in our argument, that the contract of partnership, operated as a lease of the lands for eleven years.

If it was a lease, or deed of bargain and sale, or other conveyance, it would be void, on account of the uncertainty in the description of the land. This description is as follows: "The farm of Wm. A. Sykes, known as the fourteenth section place, containing about 1280 acres, in Monroe county, Miss., and about eight miles distant, and southwest of Aberdeen." The writing of itself, without the aid of parol testimony, must be sufficiently certain in the description of the land, to point to its location and distinguish it from other tracts. Here you must resort to parol proof to ascertain what tract of land is intended to be leased. Brown v. Guice, 46 Miss., 302; 42 Miss., 724; 3 How., 230; 8 S & M., 672; 13 S. & M., 317.

Simrall, J., delivered the opinion of the court:

Some of the property out of which Mrs. Sallie A. C. Sykes claimed dower, was occupied by tenants, under leases made by her husband in his lifetime, and which had not expired when she made her application. The "fourteenth section plantation" was occupied by Jas. B. Sykes, one of the decedent's sons, under an agreement of partnership in planting, which by its terms, was to continue, notwithstanding the death of the father, and which has yet several years to run.

The questions for consideration and decision, are, the rights of the widow to dower in the property under leases, and the plantation, occupied by Jas. B. Sykes, under the partnership agreement.

Several cases have been considered in this court under the

dower act of 1857. Prior to the revision of 1857, the rights of the dowress were substantially as at common law. That statute restricted her claims to the lands, etc., of which the husband died *seized* and *possessed*, and also to such lands as had been conveyed by the husband during the coverture " *mala fide*," or not for a valuable consideration, and whereof the widow had not relinquished her right of dower." This is in part a negative and in part an affirmative statement of her claim. The language of the statute is : " Of one-third part of all the lands, tenements and hereditaments of which her husband died seized and possessed, or which he had before conveyed, otherwise than in good faith, and for a valuable consideration, and whereof the widow had not relinquished," etc. It has been laid down in the construction of this statute, that the claims of the widow shall be no further abridged than is clearly and plainly provided for by the terms of the statute. Jiggitts v. Jiggitts, 40 Miss. Rep., 719; Hinds v. Pugh, 48 Miss. Rep., 272. The former case had reference to a conveyance, alleged to be *mala fide*. The latter, and the case of Pickett v. Buckner & Newman, 45 Miss. Rep., considered the character of conveyances within the intendment of the statute, with reference to " valuable considerations " which would bar the dower. Dower may be cut off in these modes : First, by a joinder of the wife in a conveyance by the husband, acknowledged by her on privy examination apart from him, or a separate deed of relinquishment. Art. 32, Rev. Code 1857, p. 313. Secondly, by a conveyance of the husband, in good faith, for a valuable consideration. The enquiry is restricted to the lands, tenements and hereditaments of which the husband died seized and possessed, and to conveyances in which she did not join or make separate relinquishment, as to the consideration and *bona fides*.

It would seem to be clear, looking to the several statutes of *pari materia*, that the " conveyance " meant must be of the freehold, such as would destroy the seizin of the husband.

If, therefore, the husband carved out of his estate in fee, a term of years, which is but a chattel interest, although the term was outstanding and undetermined at his death, this in no wise broke up his seizin, for the possession of the tenant would be his possession, and as to such lands he would die seized.

The wife has a claim, of the same extent, to the lands and tenements of which the husband had seizin at the time of his death, which the common law accorded to her. The statute confers upon the husband a restricted power of alienation, viz.: that he may convey for a valuable consideration. That far it encroaches upon the common law. None of the lands and tenements to which Mrs. Sykes makes claim were conveyed by the husband, so as to interfere with his seizin and bar the dower. The estate of the husband must confer a right to the immediate freehold. If, therefore, the husband's estate be subject to an outstanding freehold estate, which is undetermined at his death, no right of dower attaches. Co. Litt., 32, a; 1 Green. Cruise, 162, § 8; 4 Kent., 38–40. But an estate for years, or other chattel interest, interposes no obstacle, because such interests do not interfere with the seizin, but rather preserves it; possession under the chattel interest, being regarded as the possession of the owner of the fee. Park, Dow., 77; Co. Litt., 32, a; 1 Wash. Real Est., 154.

At the common law, seizin in law was sufficient to sustain the claim of dower. We do not suppose that any special significance is to be attached to the word "possessed," in the clause of the statute. "Lands    *    *    tenements *    *    of which the husband died seized and possessed." The statute does not mean that there shall be an actual occupancy by the husband in addition to the seizin. The statute is satisfied if the husband died seized of an estate of inheritance, although at the time an outstanding term might be in a tenant, and he in actual possession. Such was the construction put upon the North Carolina statute, precisely like ours, in Wier v. Humphries, 4 Ire. Eq. Rep., 278–9; the

court holding the occupancy of the termor as the possession of the owner of the fee. Similar words, in other statutes, have received the same rendering. 1 Scribner, Dower, 589, *et seqr.;* Slaughter v. Collins, 44 Geo., 328; Apple v. Apple, 357.

There can be no doubt that, under the statute, the widow might have dower, although the lands and tenements were held adversely to the husband at the time of his death. In Connecticut, the widow is endowable of " one-third of the lands of which the husband died 'possessed.'" The word " possessed" has been construed to be synonymous with " seized." Stewart & Stewart, 5 Conn., 920. In Vermont dower is restricted to land of which the husband died " seized." But whether the words be " possessed " or " seized," or " seized and possessed," they have received the same interpretation, viz.: Seizin of an estate of inheritance in the husband.

But what effect do the articles of co-partnership have on the rights of the widow? The general rule prevailing in the United States, resting, we think, upon the soundest reason, is, that real estate bought with partnership funds, or put in as capital, for the use of the joint business, such as manufacturing, is as between the partners and their joint creditors, impressed with the character of personalty. But after the debts are paid, the partners are tenants in common, and dower may be assigned. But in this case the plantation was not bought with partnership effects; nor has the son, except as heir, any title in the land itself, except so far as may be necessary to carry out the agreement.

The substantial stipulations are, that the parties are joint owners of the stock and implements; that necessary improvements are to be made on joint account, expenses equally borne, losses equally shared, and profits equally divided. Very clearly, this, is not such an alienation of the land, as defeats dower. But how shall the dower be assigned? Shall it be out of the profits? Shall the widow be let in to

share in the fortunes of this planting adventure? If so, then in case of loss any year, she must pay her part of it. If the profits should greatly exceed the one third of the annual value, estimated as rental, should she be entitled to that? Now, under the analogy of leases made by the husband, can the dower be assigned, so as to impair the partnership contract between the father and son? It seems to be settled by authority, that the widow cannot take possession, under an assignment by metes and bounds, until the term of the tenant has expired; but that, in the meantime, she shall have one third of the annual rents, if her right extended to one third of the land. Applying the analogy of that principle, to the farm cultivated by the son, under the articles of partnership, it would follow, that until the eleven years, the time limited for its continuance, unless shortened by the death of the son, has elapsed, the widow could not enter and occupy under an admeasurement by metes and bounds; but since the partnership agreement was not a conveyance to destroy the husband's seizin, she should be endowed of one third of the income, assured to the husband. The husband was entitled to one-half the profits, after expenses were paid. The widow would receive the measure of her claim, if she were paid annually, one-third the income assured by the agreement to her husband; that is, one-third of one-half of the profits.

We are not to be understood, as holding that the widow shall be let in as a partner, to the extent of the interest indicated; but that the son shall conduct the business, under the articles, as between the estate of his father and himself. If loss occur any year, that loss to be sustained by the estate and himself; but if profit accrue, then the widow to share in them. What the widow may realize from year to year, is contingent and uncertain. Perhaps necessarily so, but not more so, than when she is endowed of one-third of the profits, as income of a mill for grinding grain, where in some instances, she has been permitted to run the mill one-third of the time, and in others, to receive one-third the profits.

The American courts have administered dower, according to the circumstances of the country, and the subject to which it applied, guided by the motive, of providing substantial support for the widow and children. Waste, at the common law forfeited the estate of the dowress; yet in Macauley, executor, v. Dismal Swamp, 2 Rob. Va. Rep., 526. The widow was permitted to cut and sell a reasonable amount of timber off the dower land; that being the only use to which the estate could be put. Although she could not open a new mine, yet she could take coals or minerals from one already opened. Stoughton v. Lee, 1 Taunt., 402; Crouch v. Puryear, 1 Rand, 258.

There were at common law many hereditaments, of which the widow was endowable, which were incapable of division and assignment, as a piscary, mines, a mill; in such instances she was assured a proper part of the income and profits, and thereby was esteemed as having the freehold of one-third part of the hereditament. 2 Scribner on Dow., 599.

An estate for years, is no obstacle to a claim for dower. In such case, the widow is to be endowed of the reservation and a proportional part of the rent. 1 Hill on real property, 134; 1 Scribner, Dow., 361, § 6; Herbert v. Wren, 7 Cranch, 380–1; but not in such wise as to interrupt the termor in the enjoyment of the farm.

We think that the widow should be endowed, of a proper proportion of the farm, but not so as to interrupt the partnership arrangement between her husband and his son, not however, to be taken in possession as admeasured, until the occupancy of the son, under the partnership articles terminates; in the meantime, there should be paid her one-third of one-half of the profits, annually. The widow is also entitled to that proportion of the profits of the farm, since the death of her husband; and to one-third of the rents of the other real estate, from the same date.

We perceive no error in the decree, except as to the basis of the account in reference to the rents of the farm. It

ought to be ascertained what has been the annual income of the plantation, since the death of the husband, after deducting the expenses, as provided for in the articles of agreement; and one-third of one-half of such nett income should be paid to the widow.

So much of the decree, as relates to the real estate, (except the plantation,) is affirmed. So much of it as orders an account of rents of the plantation, is reversed, and the cause is remanded for further proceedings, in accordance with this opinion,