68  449
73  48

SALINGER v. BLACK.

Opinion delivered December 8, 1900.

1. LIMITATION OF ACTION—FRAUDULENT CONCEALMENT.—Where, to rebut the defense of the statute of limitations, plaintiffs claim that they were prevented from suing at an earlier day by the fraud of the defendants, they must show by evidence how they came to be so long ignorant of their rights and the means used by defendants to keep them in ignorance, and how and when they first came to a knowledge of their cause of action. (Page 455.)

2. SAME—JUDICIAL SALES.—The five-years statute of limitation to actions "for the recovery of lands sold at judicial sales" (Sand. & H. Dig., § 4818) applies to an action by the heirs and creditors of an estate of a deceased person to have certain lands formerly belonging to the estate and purchased by defendants decreed to be held in trust for such heirs and creditors. (Page 456.)

3. DOWER—MORTGAGED LAND.—A widow is entitled to dower in lands of her husband subject to a mortgage in which she joined, but not to an appropriation of the personal estate to relieve such lands from the incumbrance. (Page 457.)

4. SAME—CONTRIBUTION.—Where lands of an estate subject to a mortgage, in which the widow joined, were redeemed with money of the estate, and were assigned to her as dower, and the estate is insolvent, the widow is not entitled to hold such lands as dower unless she pays her proportionate and equitable share of the sum paid to redeem, which share must equal the sum of an annuity of the amount of one-third of the interest upon the sum so paid, at the time of such payment, for the residue of her life. (Page 457.)

5. SUBROGATION—ADMINISTRATION.—Where lands of an insolvent estate were redeemed from a mortgage in which the widow had released dower, and were subsequently assigned to the widow as dower, the administrators are entitled to be subrogated to the rights of the mortgagees to collect so much of the mortgage debt as is equal to the widow's share of the amount paid to redeem by causing the interest assigned to her as dower to be sold for the purpose of foreclosing the mortgage to that extent. (Page 458.)

6. JUDGMENT—MISTAKE.— Where an order of the probate court directing the redemption of mortgaged lands of an estate was made under a mistake of fact, it being thought that the estate was solvent when it was not, and the lands were assigned to the widow as dower, although she had released dower therein, such lands will be liable for their proportionate part of the unpaid debts of the estate. (Page 458.)

29

7. *LIMITATION OF ACTION—DEATH.*—If the maker of a promissory note die before action thereon is barred, and letters of administration are granted upon his estate, the statute of limitation of five years ceases to run, and the statute of non-claim begins to run from the grant of letters upon his estate. (Page 459.)

8. WIDOW—RIGHT TO MANSION—WAIVER.—Where a widow charged herself, as administratrix, with the rents of her husband's mansion from the date of his death until dower was assigned, she will be deemed to have waived her right to the same. (Page 460.)

9. ACTION TO SUBJECT DOWER LANDS TO DEBTS—CREDITS.— In a suit to hold lands of an estate, which have been redeemed from a mortgage and assigned to the widow as dower, liable for their proportion of the estate's debts, the widow is not entitled to credits which she might have allowed to her as administratrix of the estate in a future settlement with the probate court. (Page 461.)

Appeal from Monroe Chancery Court.

JOHN C. HAWTHORNE, Special Judge.

*J. W. House,* for appellants.

The proof did not warrant the court in setting aside the sale of real estate to Andrews on June 1, 1887. A probate court judgment, if erroneous, can be corrected only on appeal. 48 Ark. 544; 11 Ark. 519; 12 Ark. 84; 54 Ark. 480; 54 Ark. 341; 33 Ark. 575; 27 Ark. 647. The lands brought their full market value, and the sale is valid. If the price was inadequate, a re-sale should have been ordered, and a showing made that the price offered by Andrews was less than would be obtained on such re-sale. 13 Allen, 417; 1 Gratt. 4. The evidence fails to show that Andrews bought the property for Mrs. Salinger. Even if she had bought the land herself, the sale, upon confirmation, was not void, but voidable, and any deficit could be waived by the parties in interest. 30 Am. St. Rep. 245; 74 Me. 465; 19 Am. Dec. 257; 105 Pa. St. 375; 56 Am. Dec. 88; 13 Allen, 417; 23 Ga. 249; 7 Sm. & M. 409; 55 Ark. 85. While the administratrix could not buy at her own sale, she could buy from another after confirmation. 27 Ark. 647; 33 Ark. 575; 55 Ala. 525; 72 Ala. 224. Appellees are barred by laches. 34 Ark. 467; 36 Ark, 400–1; 23 Ga. 249; 94 Ga. 496; 2 Bro. Ch. 426. By analogy, the statute of limitation applies. 55 Ark. 85. In order for a plaintiff

to excuse delay in bringing a suit, upon the ground of the defendant's fraud, he must set forth and prove specifically the impediment to an earlier prosecution, how he came to be so long ignorant of his rights, the means used by defendant to keep him so, and how and when he first came to a knowledge thereof. 46 Ark. 36; 21 Wall. 178. The settlements were of record, and were notice to all parties; and appellees are chargeable with laches in not ascertaining their contents. 46 Ark. 36; 42 Ark. 491; 58 Ark. 94. A charge of fraud must be specific. 51 Ark. 1. Appellant's plea of the five-years statute of limitation should have been sustained. Sales of real estate made pursuant to orders of probate court are judicial sales within that statute. 54 Ark. 641; 46 Ark. 35; 44 Ark. 479. Appellees are chargeable with a knowledge of the facts in this case sufficient to apprise them of their alleged rights within the period of limitation; and the statute began to run against them at the date when they could and should have known of their rights. 46 Ark. 35; 41 Ark. 303-4; 58 Ark. 91; 2 Wall. 87; 20 Mo. 541; 53 Fed. 875; 58 Ark. 91; 101 U. S. 135-141; 53 Fed. 415; 149 U. S. 231. If appellant was in actual possession, claiming the legal title, it is no bar to the running of the statute that appellees claimed the equitable title. 22 Ark. 178; 22 Ark. 483; 23 Ark. 336; 39 Ga. 381. The court erred in opening the first annual settlement. 40 Ark. 393; 42 Ark. 186; 43 Ark. 186; 50 Ark. 217; 36 Ark. 395. The remedy was by appeal. 51 Ark. 1; 35 Ark. 137; 36 Ark. 383. It was error to decree that appellees be subrogated to the rights of the mortgagees. On the point of an administrator's right to compromise debts due the estate, see: 49 Ark. 236-7; 13 N. H. 18; 11 Am. & Eng. Enc. Law (2 Ed.); 26 Me. 538. Appellant was entitled to rents on the home place until her dower was assigned. 34 Ark. 63; 40 Ark. 405-6; 42 Ark. 515; 44 Ark. 490.

*Manning & Lee, C. F. Greenlee*, and *Norton & Prewitt*, for appellee.

The purchase of the reversionary interest should be set aside as fraudulent. The statute of five years does not apply.

54 Ark. 627; 53 Ark. 400, S. C. 14 S. W. 96; 58 Ark. 84, S. C. 23 S. W. 4; 58 Ark. 252, S. C. 24 S. W. 495. Mere lapse of time is not the only ingredient of laches. 19 Ark. 16; 22 Ark. 1; 52 Ark. 502, 510. Appellant's plea of laches is not made out. A widow can not have incumbered lands redeemed for her benefit. 55 Ark. 225.

BATTLE, J. On the 21st day of August, 1883, Saul Salinger died intestate, leaving surviving him Mittie Salinger, his widow, but no children. He died seized and possessed of personal property and lands. Letters of administration were granted by the Monroe probate court to Louis Salinger and Mittie Salinger, authorizing them to administer his estate. One-half of the personal estate was set apart, by order of the probate court, to the widow as dower.

Among the lands which belonged to the estate of Saul Salinger at the time of his death were the following: The north half of the southeast quarter, and the southeast quarter of the southwest quarter, and the south half of the southeast quarter, and the north half of the southwest quarter, of section 8; the southwest quarter of section 9; the northeast quarter of the northwest quarter, and the northeast quarter, and the north half of the southeast quarter, of section 17,—in township 4 north, and in range 2 west. These lands were incumbered by mortgages, which were executed by Saul Salinger, in his life-time, to Furstenheim & Wellford, to secure a debt he owed to them. Mrs. Salinger joined in the execution of the mortgages, and relinquished her dower in the lands. On the 14th of April, 1884, Mrs. Salinger and her co-administrator filed a petition in the probate court of Monroe county, representing that it would be to the interest of the estate of Saul Salinger, deceased, and not to the injury of the creditors, to use the general assets of the estate to redeem the lands. On the same day the petition was granted by the court, and the administrator and the administratrix were authorized and directed to pay the debt secured by the mortgages out of the general assets of the estate; and they thereafter, at different times, paid in discharge of the debt, out of the assets of the estate, no part of which constituted the dower of the widow, the sum of $31,-

859.72. The debt so paid had been previously probated against the estate. At the time 'the order to redeem was made the debts other than the mortgage debt,' which had been probated against the estate, amounted to only $968; and the estate appeared to be solvent.

On the 14th day of November, 1885, commissioners appointed by the Monroe probate court set apart and allotted to Mrs. Salinger, as a part of her dower, the following lands: The southeast quarter and the southeast quarter of the southwest quarter, and the north half of the southwest quarter of section 8, the southwest quarter of section 9, and the northeast quarter of the northeast quarter of section 17, in township 4 north, and in range 2 west, which were a part of the lands incumbered by the mortgages and redeemed as before stated. They reported their proceedings to the probate court, and it approved their action.

On the first day of June, 1887, the administrator and administratrix sold, under an order of the probate court, the following among other lands: The northwest quarter of the northwest quarter, and the northeast quarter of the northwest quarter, and the south half of the northeast quarter, and the north half of the southeast quarter, of section 17, in township 4 north, and in range 2 west; and I. T. Andrews purchased them, he being the highest bidder. On the 18th day of April, 1890, the administrator and administratrix, under the same authority, sold, at vendue, to the same purchaser, the lands assigned to the widow, described above, subject to her dower. Both sales were reported to and confirmed by the probate court, the former at its October term, 1887, and the latter at its April term, 1891, The administrators conveyed to Andrews the lands sold to him on the 1st of June, 1887, by deed bearing date the 1st of March, 1888, which has been recorded. They also conveyed to him the reversionary interest in lands which he purchased on the 18th of April, 1890. On the 30th of May, 1888, Andrews conveyed to Mrs. Salinger the lands purchased by him on the 1st of June, 1887, receiving for the same three hundred dollars more than it cost him. She filed her deed for record on the 19th of June, 1888, and immediately after her purchase took

possession of the land, and held it adversely to all persons, and cultivated and improved it as her own.

The administrators filed as many as six annual accounts current, showing their debits to the estate and the credits to which they are entitled. The administration of the estate is still open.

On the 27th of October, 1893, certain creditors of the estate and the heirs of Saul Salinger, deceased, commenced a suit against Mittie Salinger (Louis Salinger having died) and I. T. Andrews, alleging that the purchases of real estate by Andrews on the first day of June, 1887, and on the 18th of April, 1890, were made for the use and benefit of Mrs. Salinger, and asked that Mrs. Salinger and Andrews "be decreed to hold said lands in trust for the creditors and heirs of Saul Salinger, deceased; that an accounting be had of rents and profits, to the end that the debts of said estate may be paid, and distribution of any surplus made to heirs." In May, 1894, they filed an amendment to their complaint in which they alleged the foregoing facts as to the mortgage of land to Furstenheim & Wellford, the redemption of the same, and the assignment of dower to widow in a part of the same; and asked that they be subrogated to the rights of Furstenheim & Wellford under the mortgages, and for the foreclosure of the same to the extent it may be necessary to pay the claims probated against said estate. They filed many other amendments, alleging that the settlements filed contained many errors, and asked that the same be surcharged and falsified. The defendants answered, and denied that Andrews purchased the real estate for the use and benefit of Mrs. Salinger, and alleged that he purchased the same in good faith for himself, and pleaded the five and seven years statutes of limitation in bar of the action.

After hearing the evidence adduced at the hearing, the court found that the lands sold on the 1st of June, 1887, were purchased by Andrews for Mrs. Salinger, and that she holds the title to the same for the benefit of her intestate's estate; that the purchase of real estate by Andrews at the sale on the 18th of April, 1890, was made in good faith and valid; that Mrs. Salinger was not entitled to dower in the lands mortgaged

to Furstenheim & Wellford, and is responsible for the rents she has received for the same; and that the mortgages in favor of them be foreclosed for the benefit of the plaintiffs, and that the life estate assigned to the widow in the lands thereby incumbered as dower be sold to satisfy the same; and decreed that the creditors of the estate of Saul Salinger, deceased, be subrogated to the rights of Furstenheim & Wellford under the mortgages in their favor, and that the lands purchased by Andrews at the sale on the 1st of June, 1887, and the life estate set apart to Mrs. Salinger as dower in the lands mortgaged to Furstenheim & Wellford, be sold at public sale to pay the unpaid debts probated against said estate, and for other purposes. And the defendants appealed; and from so much of the decree as found the purchase of the reversionary interest in the lands by Andrews at the sale on the 18th of April, 1890, to be in good faith and valid the plaintiffs appealed.

It appears from the allegations in the complaint of the plaintiffs that Mrs. Salinger has been in the possession of the lands sold on the first of June, 1887, and purchased by Andrews, at all times since the sale controlling the same and enjoying the profits thereof; ,and, although it is not expressly alleged, it clearly appears from the complaint that she has been in the open and adverse possession of the same for more than five years before the commencement of this suit. The defendants having pleaded the five years statute of limitatation, it devolved upon the plaintiffs to prove that their suit came within some exception to the general rule adopted by the statute. They claim they were prevented from suing at an earlier day by the fraud of the defendants. To maintain their suit upon that ground, they should have shown by evidence how they came to be so long ignorant of their rights, and the means used by the defendants to fraudulently keep them in ignorance, and how and when they first came to a knowledge of the fact, if it be a fact, that the lands were purchased by Andrews for Mrs. Salinger. Having failed to do this, they are barred by the statute pleaded from maintaining this suit. *McGaughey* v. *Brown*, 46 Ark. 25; 2 Greenleaf on Evidence (16th Ed.) § 448, and cases cited; 2 Wood on Limitations (2d Ed.) § 276, and cases cited.

But the plaintiffs contend that the five-years' statute of limitation has no application to this case. What was said in *Hindman* v. *O'Connor*, 54 Ark. 641, in response to a like contention, may be appropriately said in response to plaintiff's contention in this case. In the case cited this court said: "Mrs. O'Connor relies on the five years' statute of limitation to sustain her title. That statute provides: 'All actions against the purchaser, his heirs or assigns, for the *recovery* of lands sold at judicial sales shall be brought within five years after the date of such sale, and not thereafter; saving to minors and persons of unsound mind the period of three years after such disability shall have been removed.' Appellants insist that that statute has no application to an action like this, the object of which is to set aside a sale of land for fraud. So *McGaughey* v. *Brown*, 46 Ark. 25, was an action to set aside a sale of land for fraud. The prayer of the bill in that case was that the sale be set aside; that a master be appointed to take an account of the rents and profits; that the conveyances of the land, which were alleged to be fraudulent, be removed as a cloud upon the title of plaintiffs; and that they be put into the possession of the land. This court held that the object of the bill was to get possession of the land, and that the action was barred by the five years' statute. In this case (*Hindman* v. *O'Connor*) the prayer of the complaint is that the sale be set aside; that an account be taken between the plaintiffs and defendants as to the rents and profits of the block in question and the sums paid by defendants for the benefit of plaintiffs; and that 'the correct and true balance be ascertained between them;' and that said property be sold for purposes of partition and to satisfy the balance found by the master; and for other relief. One of the obvious objects of the complaint was the recovery of the land. That was necessary to accomplish the purpose of the action. The statute applies."

In the case before us the prayer of the complaint is that the defendants, Mittie Salinger and I. T. Andrews, be decreed to hold said lands in trust for the creditors and heirs of Saul Salinger, deceased; that an accounting be had of the rents and profits, to the end that the debts of said estate may be paid,

and that the distribution of any surplus may be made to the heirs; and for other relief. One of the obvious objects of the suit was the recovery of the lands. How could the possession of the land held by Mrs. Salinger in her own right be transferred to the defendants as trustees? How could they be used for the purpose of paying the debts of the estate unless they were recovered? That was necessary to accomplish the purpose of the suit. The statute applies.

We see no sufficient reason for disturbing the finding of the court as to the validity of the purchase by Andrews of the reversionary interest in lands at the sale on the 18th of April, 1890. It is presumed to be *bona fide* until the contrary is shown. The burden of showing that it was fraudulent was upon plaintiffs. They have failed to do so.

The circuit court erred in holding that Mrs. Salinger was not entitled to dower in the lands mortgaged to Furstenheim & Wellford. She was entitled to dower therein subject to the mortgages, but she was not entitled to an appropriation of the personal estate to relieve the lands from the incumbrance upon them. *Hewitt* v. *Cox*, 55 Ark. 225.

When the interest in the land which was assigned to her as dower was redeemed by the payment of the mortgage debts, she received more than she was entitled to. At the time the probate court directed the administrators to redeem the lands from the mortgages, the estate of Saul Salinger, deceased, appeared to be solvent, but the reverse proved to be true. The result was, assets that should have been used in paying the debts of the estate were appropriated to the redemption of the lands. The creditors virtually redeemed the lands, including the widow's dower in the same, and are entitled to be reimbursed in some manner and to some extent on account of moneys expended in the redemption.

Mrs. Salinger should not be required to pay the whole of the mortgage debt in order to redeem the interest in the lands mortgaged which were assigned to her as dower. She was under no personal obligation to do so. The mortgages were a burden upon the lands, and the payment of them by her was not a personal debt. But, the creditors having redeemed in the

manner stated, and all the estate in the lands incumbered, except her dower interest, having been sold, and the proceeds of the sale having been appropriated to the part payment of their claims, and the debts of the estate being still unpaid, she is not entitled to hold dower in the lands free of charge, unless she pays her proportionate and equitable share of the sum paid to redeem. That share can be ascertained by finding out what part of the total value of all the lands encumbered by the mortgages the value of the estate in fee in so much thereof as was assigned to the widow is, and by setting apart such part of the sum paid to redeem to the lands allotted to the widow. Her part of the sum so paid will be equal to the sum of an annuity of the amount of one-half of the interest upon the sum so set apart, at the time of such payment, for the residue of her life. To illustrate: If the value of the fee in the lands assigned to her was one-half of the total value of the lands mortgaged, and the sum paid to redeem was $30,000, her share of this amount will be a sum which will be equal to the value of an annuity of the amount of one-half of the interest upon fifteen thousand dollars, at the time of the payment, for the residue of her life. *Bell* v. *Mayor of New York*, 10 Paige, 49, 71; *House* v. *House*, 10 Paige, 158, 164; 1 Scribner, Dower, (2d Ed.), pp. 537, 539.

The administrators of Saul Salinger, deceased, who represented the creditors, having redeemed the lands, are subrogated to the right of the mortgagees to collect so much of the mortgage debt as is equal to the widow's share of the amount paid to redeem, by causing the interest assigned to her as dower to be sold for the purpose of foreclosing the mortgages to that extent. They hold this right for the benefit of the creditors, without any assignment or act of transfer, as *quasi* assignees, for the purpose of compelling contribution. Sheldon on Subrogation (2d Ed.) § 45, and cases cited; 3 Pomeroy's Eq. Jurisprudence, §§ 1222, 1223.

The defendants argue that the lands were redeemed in pursuance of an order of a court having jurisdiction to make it, and therefore cannot be again charged with the mortgage debt. There is no occasion for disregarding or setting the order aside. It was made under a mistake of fact. At the time it was made

it was thought that the estate was solvent, and that it could be made without injury to the creditors. But this was afterwards discovered to be a mistake. Treating the redemption as having been lawfully made, the question is, ought the widow or her dower, under the circumstances, to be made to contribute any part of the sum paid to redeem? In *Wilson* v. *Harris*, 13 Ark. 559, the administrator made a final settlement, and delivered the residue of the assets in his hands to the widow and heirs of his intestate, and was discharged by the court. At the time the order discharging him was made, a demand which had been duly probated against the estate remained unpaid, and was overlooked. This court held that the unpaid creditor had the right to file a bill against the widow and heirs for contribution and payment of his demand. So in this case the widow has received the benefit of assets which should have been appropriated to the payment of creditors, and she should restore to the creditors her proportion of such assets. In both cases the order was made by a court of competent jurisdiction, in an *ex parte* proceeding, under a mistake of fact; and the result is the same. While the facts in the two cases are different, the principle upon which each rests is the same.

Defendants further say that the right to foreclose the mortgages, as to the estate assigned to the widow as dower in the lands incumbered thereby, was barred by the statute of limitation before the commencement of this suit. But they are in error. So much of the statute which provides when actions to foreclose mortgages shall be brought as is applicable to this case is as follows: "In suits to foreclose or enforce mortgages or deeds of trust, it shall be a sufficient defense that they have not been brought within the period of limitation prescribed by law for a suit on the debt or liability for the security of which they were given." Sand. & H. Dig., § 5094. The debt secured by the mortgages in this case were evidenced by promissory notes, and the period of limitation within which the statute provides actions shall be brought on promissory notes is five years after the cause of action shall accrue. But if the maker of promissory notes shall die before an action upon the notes is barred, and letters of administration are granted upon his

estate, the five-years statute ceases to run as to him, because, under our law, it is displaced at once by the two-years' statute of non-claim, which runs against all subsisting claims against the estate of the maker not barred, not from the accrual of the cause of action, but from the grant of letters upon his estate.* In the case at bar the promissory notes secured by the mortgages were not barred by the statute of limitation at the death of Saul Salinger, their maker, and were duly probated within the time prescribed by the statute. After this no statute of limitation ran against them until after the close of the administration of the estate of the deceased, which was open at the commencement of this suit. *Biscoe* v. *Madden*, 17 Ark. 533, 539; *Walker* v. *Byers*, 14 Ark. 256; *Bennett* v. *Dawson*, 18 Ark. 336; *Bennett* v. *Dawson*, 15 Ark. 412; *Worthington* v. *DeBardlekin*, 33 Ark. 651; *Mays* v. *Rogers*, 37 Ark. 155; *Fort* v. *Blagg*, 38 Ark. 474; *German Savings & L. Society* v. *Hutchinson*, 68 Cal. 52.

Defendants say that the court erred in refusing to allow Mittie Salinger, as administratrix of Saul Salinger, deceased, a credit for the rents of the farm attached to the mansion or chief dwelling house of her late husband, for the years 1883, 1884 and 1885, amounting, without interest, to about $2,500. Their reason for this contention is, she was entitled to the use and possession of such farm, free of charge, from the date of her husband's death until her dower was assigned, which was the 11th day of January, 1886. It is true that the statute provides: "If the dower of any widow is not assigned and laid off to her within three months after the death of her husband, she shall remain and possess the mansion or chief dwelling-house of her late husband, together with the farm thereto attached, free of all rent, until her dower shall be laid off and

---

*In *Whipple* v. *Johnson*, 66 Ark. 204, it was held that the running of the general statute of limitations of five years as to a note would not, upon the death of the maker, be suspended by the statute of non-claim until letters of administration are granted upon deceased's estate. It seems to have been held in *Biscoe* v. *Madden*, 17 Ark. 539, that the general statute of limitation would cease to run at the debtor's death, and that the statute of non-claim would commence to run from the grant of letters upon his estate. (Reporter.)

assigned to her." Sand. & H. Dig., § 2537. But she has charged herself with these rents in her annual settlements with the estate of her deceased husband, and thereby waived her right to the same under the statute. This course of conduct was calculated to lead the heirs and creditors of the estate to believe that she would continue to charge herself with the rents of such farm, and to postpone the assignment of her dower in the lands on account of it, believing that they had lost and would lose nothing by the postponement. It would be unjust and inequitable to allow her credit for the rents after she had for so many years waived her rights under the statute, and after the parties interested had probably suffered her to remain in possession of the farm for many years under the belief that she had waived her rights under the statute quoted, and would continue to do so until her dower was assigned.

They further contend that Mittie Salinger, as administratrix, is entitled to additional credits for $1,285 and $1,181.57. These are amounts for which the probate court has authorized her to take credit in some future settlement to be filed by her. It appears that she has not asked for a credit for the same in any settlement, and that her administration is still open. Under these circumstances, the proper place in which to ask for them is a settlement filed by her as administratrix in the probate court. *Hankins* v. *Layne*, 48 Ark. 544.

The decree of the circuit court is, therefore, reversed as to the land sold on the first day of June, 1887, and the plaintiff's complaint is dismissed as to the same; is affirmed as to the reversionary interest in lands sold on the 18th of April, 1890; and is reversed as to the dower set apart in lands mortgaged to Furstenheim & Wellford; and this cause is remanded with instructions to the court to ascertain Mrs. Salinger's portion of the amount paid to redeem the land so mortgaged, and to render a decree directing the interest assigned her as dower in the lands redeemed, or so much as may be necessary, to be sold, and the proceeds of the sale to be appropriated to the payment of her said portion, if the same be not paid within a specified time, and to change and conform its decree to this opinion, and for other proceedings.

WOOD, J., did not participate.