MAYO v. ARKANSAS VALLEY TRUST CO.

Opinion delivered December 22, 1917.

1. DESCENT AND DISTRIBUTION—PERSONAL PROPERTY—RIGHTS OF WIDOW, CREDITORS AND COLLATERAL HEIRS—DOWER.—Where deceased left a widow and collateral heirs only, under Kirby's Digest, § 2709, the widow takes as her dower one-third of the personalty as against creditors, and one-half as against collateral heirs; though the widow can take only one-third as against creditors, she is entitled to one-half as against collateral heirs, even though it takes all of the remainder to pay the debts, and if more than one-half of the estate is required to pay the debts, the widow is, as against collateral heirs, entitled to the remainder. *Semble.* The same rule applies to realty which constituted a new acquisition of the decedent.

2. DOWER—RENTS FROM REAL PROPERTY.—Under the statute, the widow is given the same proportion of rents collected from the real property of deceased, whether the rents be treated as personalty or part of the realty.

3.  ADMINISTRATION—DOWER—WRONGFUL APPROPRIATION OF FUNDS TO
    PAY DEBTS.—A wrongful appropriation of funds of the estate by
    the executor, belonging to the creditors or heirs, to the discharge
    of that part of an encumbrance upon the estate, to which the
    widow's dower was subject, would call for the application of the
    doctrine of subrogation so as to compel the widow to contribute
    her proportion to the discharge of the encumbrance.

4.  ADMINISTRATION—DISCHARGE OF MORTGAGE—CONSENT OF THE PAR-
    TIES.—Where a mortgage upon property of the estate is dis-
    charged by the executor from funds derived from the rent of all
    the property of the estate, with the consent of the widow and
    heirs, the parties can not thereafter object, and ask for an ac-
    counting of the funds so applied.

5.  DOWER—PROPERTY IN ANOTHER STATE—CONFLICT OF LAWS.—Where
    deceased died leaving real property in another State, the rights of
    the widow in the rents derived therefrom will be determined by the
    laws of the State where the property is located.

6.  ADMINISTRATION—OPERATION OF BUSINESS—PROFITS.—The rights
    of the widow in the personal estate of the deceased husband are
    fixed by the amount of the property as it stands at the date of
    the death of the husband; the executor is without authority to
    operate deceased's business, and does so at his peril; but when
    he does operate it, he must account for a profit earned, and the
    widow is entitled to her proportion thereof, for the reason that
    the earned profit is treated as a portion of the estate as it existed
    at the time of the death of the testator.

7.  DOWER—REAL AND PERSONAL PROPERTY.—Under the statute, the
    widow's dower is divided into two classes for the purpose of es-
    timating dower, real and personal, and dower is to be set apart in
    each class separately, and no deficiency in one class can be made
    up from the other.  The widow is entitled to one-third of the
    rents as against creditors, and one-half as against collateral heirs.

8.  DOWER—MORTGAGED PROPERTY.—A widow is not entitled to dower
    in mortgaged property free of the encumbrance.

Appeal from Sebastian Chancery Court, Fort Smith
District; *W. A. Falconer,* Chancellor; reversed.

*Hill, Fitzhugh & Brizzolai a,* for appellant.

1.  The chancellor erred in his construction of the
statute as to the widow's dower.  The estate was a new
acquisition, and as between the widow and collateral heirs
the widow was entitled to one-half of the gross amount of
the estate, personalty, realty and rents.  Kirby's Digest,
§ 2923; 75 Ark. 240; 116 *Id.* 427; *Ib.* 400.

2. The amount found in the decree is erroneous under the theory adopted by the court. Kirby & Castle's Digest, § § 79, 190; 2 Woerner, Adm., § § 337-9, 340-44; 60 Ark. 461; 20 S. E. 431; 58 *Id.* 540.

3. The widow was entitled to dower in the Pabst mortgage rents without deduction for the debt. 55 Ark. 225; 68 *Id.* 449; 121 *Id.* 64; 58 Me. 271; 15 N. H. 38; 29 *Id.* 564; 14 Cyc. 918; 7 Cranch, 370; 1 Scribner on Dower, 377; 1 Woerner, Adm., 237.

4. She was entitled to dower in the Ohio rents and the net profits of the business. 1 Woerner, Admr., p. 261.

5. The widow was entitled to subrogation to the rights of creditors. 17 Ark. 581; 52 *Id.* 499; 68 *Id.* 499.

*Read & McDonough* and *C. A. Reid,* for appellees.

1. The court properly construed the statute.

2. Rents before and after death of testator were properly construed and distinguished. 14 Cyc. 102; 49 Ark. 87; 46 *Id.* 373; 21 *Id.* 62; 14 Cyc. 104; 116 Ark. 400.

3. A reasonable construction of the statute makes it immaterial whether property is real or personal. Black on Int. Laws, 104-6, § § 48, 74. The widow was not entitled to subrogation. 102 Ark. 322.

4. The widow should be charged with one-half the Pabst mortgage. 14 Cyc. 291; 15 N. H. 38, 43; 29 *Id.* 564; 5 Johns. (N. Y.) 482; 37 Me. 516; 22 Cent. Dig. 306; 14 Cyc. 922; 61 Mich. 608, 620-22; 18 Atl. 374-89, etc.; 2 Washb., Real Prop., 565-6; 55 Ark. 225; 68 *Id.* 449.

5. The widow was not entitled to dower in the Ohio rents. Code Ohio, § 8606; 80 Oh. St. 71; 11 Oh. Ct. Ct. (N. S.) 474; 6 C. C. 570; 22 Oh. Ct. Ct. 409, 416; 55 Ark. 225.

6. Upon the widow's election, the trust estate for her benefit terminated and appellees are entitled to immediate possession. Jarman on Wills, 539; 101 U. S. 788; 249 Ill. 606; 234 *Id.* 407; 82 Ky. 5; 106 Pac. 1038; 2 Jarman on Wills, 945, 1378; 141 Pa. St. 201; 32 N. J. Eq. 597; 81 Iowa, 701; 147 S. W. 25, etc.

McCULLOCH, C. J.   Dave Mayo, a citizen of the State of Arkansas, and a resident of the city of Fort Smith, died in the year 1908, leaving a large estate, consisting of personal property and real estate in Fort Smith.   He left a widow, Sallie E. Mayo, the plaintiff in this case, and certain collateral heirs, but no children or other descendants.   He executed his last will and testament in which the Arkansas Valley Trust Company, one of the defendants, was named as executor, and after the will was probated said defendant qualified as executor and took charge of all of the property of the estate, both real and personal, in this State, and has managed said property since that date, receiving all the personal property and collecting the rent of the realty without objections from either the heirs or the widow.   Within apt time after the will was probated the widow renounced any claim thereunder and elected to take her dower, and she instituted the present action in the chancery court of Sebastian County against the executor and heirs to have her dower ascertained and set apart to her.   The personal estate of said decedent, exclusive of the minimum allowance of dower under the statute, was more than sufficient to pay the debts of the estate, and payments on dower were made to the widow from time to time without the ascertainment or adjudication of the extent of her rights.   There is a controversy now as to the extent of the widow's rights and this appeal involves the solution of those questions.

We find it unnecessary to state all the details of the controversy for the reason that we have reached the conclusion that the chancellor erred in his construction of the statute of this State with reference to the dower rights of the widow, and the decree must be reversed.   There is little, if any, controversy concerning the facts, and a statement now of the law applicable to the case will enable the chancellor to readily apply the facts when the case is remanded for further proceedings.

The principal controversy turns upon the construction of the following statute, declaring the dower rights

of a widow where there are no children or other descendants of the decedent:

"If a husband die, leaving a widow and no children, such widow shall be endowed in fee simple of one-half of the real estate of which such husband died seized, where said estate is a new acquisition and not an ancestral estate; and one-half of the personal estate, absolutely and in her own right, as against collateral heirs, but, as against creditors, she shall be endowed with one-third of the real estate in fee simple if a new acquisition and not ancestral, and of one-third of the personal property absolutely. Provided, if the real estate of the husband be an ancestral estate she shall be endowed in a life estate of one-half of said estate as against collateral heirs, and one-third as against creditors." Kirby's Digest, § 2709.

(1) The real estate owned by Dave Mayo constituted a new acquisition, and this fact brings the case within the operation of the statute just quoted. One-half of the personal property was insufficient to pay the debts, but it did not require two-thirds of the personalty for that purpose. It is conceded that the widow is entitled to one-third of the estate, both real and personal, regardless of the amount of the debts, but the controversy arises over the proper rule of division where, as in this case, more than one-half, but less than two-thirds, of the personal estate is required for the payment of the debts. The defendants contend and the learned chancellor held that under those circumstances the widow, being entitled to one-third in any event, the balance of the personalty after paying the debts should be equally divided between the widow and the collateral heirs. That is not a correct interpretation of the statute, which means that the widow, where there are no children, takes as her dower one-third of the personalty as against creditors and one-half as against collateral heirs. It means that, though the widow can take only one-third as against creditors, she is entitled to one-half as against collateral heirs, even though it takes all of the remainder to pay the debts, and that if

more than one-half of the estate is required to pay the debts, she is, as against collateral heirs, entitled to the remainder.   There is, we think, no reason for construing the statute to mean that where more than one-half of the estate is required to pay the debts, the surplus over the one-third which the widow is entitled to as against creditors should be divided between her and the collateral heirs.   The collateral heirs get nothing under the statute unless one-half of the estate is more than sufficient to pay the debts, and then they get what is left out of that one-half after the payment of the debts, but in no event can their rights encroach upon the rights of the widow who is given a preferential right to one-half of the estate as against collateral heirs.   The same rule applies as to realty which constituted a new acquisition of the decedent, but we are only discussing the question of the rights in the personalty inasmuch as it is conceded that the real estate is not needed for the payment of the debts.

Counsel for defendants argue the injustice of this interpretation of the statute, but with that we have nothing to do.   It may be stated, however, in reply to that suggestion that it has been the plain policy of the laws of this State to favor the widow as against collateral heirs, and that policy is made manifest in the plain letter of the statute now under consideration.   It was doubtless thought by the lawmakers that the moral claims of collateral heirs upon the estate of a decedent were so remote that they ought not to participate in the estate unless something is left after the widow is given one-half and the debts of the decedent paid out of the other one-half. It is not within the province of the court to find fault with the policy of the lawmakers, even if different views concerning that policy should be entertained.

The conclusion is reached, therefore, by a majority of this court that the chancellor erred in confining the rights of the widow to one-half of the surplus personal estate in excess of one-third after payment of debts.

There is a further controversy between the parties concerning the disposition of the rents collected by the

executor of the real estate owned by the decedent. It appears from the record that without objections from either the heirs or the widow—in fact it was with the acquiescence of them all—the executor took charge of the real estate, though not needed for payment of the debts, and rented the property and collected the rents from the time of the decedent's death up to January 1, 1916. The executor received gross rents aggregating $13,775.44, and paid out for taxes, repairs, insurance, etc., $3,364.15, leaving a net sum of $10,411.29. The property consisted of a lot referred to as the "beer depot" and two storehouses on Garrison avenue. The amount of the rents of the beer depot was $2,830 gross. There was a mortgage on the beer depot executed by the decedent to the Pabst Brewing Company to secure a debt which, with accumulated interest, amounted to $4,936.90, and the executor paid the mortgage out of the rents collected.

(2-4)   The question is earnestly debated whether the rents from the realty should be treated as personalty or as a part of the real estate, but in view of the fact that the widow's rights are not affected by the determination of that question, she being given the same proportion under our statute whether the rent be treated as personalty or as a part of the realty, it is immaterial to decide that question. This court decided in *Stull* v. *Graham,* 60 Ark. 461, that rents accruing after the death of the owner from a lease for a term of years executed by the owner is personal property which goes to the representative of the decedent, but the converse of that proposition is that rents accruing after the death of the owner not arising from a lease executed by him constitute accumulations from the real estate, as contended by counsel for defendants, and should be treated as real estate. We do not deem it necessary to settle that controversy, for, as before stated, the rights of the widow are not affected by it. She is in any event entitled to her proportionate part of the rents whether they be treated as part of the personalty or as accumulations from the realty. The statute (Kirby's Digest, § 77) provides that until the widow's dower be

apportioned she shall be paid her proportion of the rents of the realty, and her rights under that section have been fully recognized in decisions of this court. *Menifee* v. *Menifee,* 8 Ark. 9; *Trimble* v. *James, Admr.,* 40 Ark. 393. Her proportionate part of the rents under Kirby's Digest, section 2709, as hereinbefore interpreted, is one-third as against creditors and one-half as against collateral heirs. The widow's dower rights in the real estate were subject to the mortgage thereon, and if the dower had been assigned while the property was thus encumbered the portion set aside to her should have been subject to one-half of the encumbrance. *Hewitt* v. *Cox,* 55 Ark. 225; *Salinger* v. *Black,* 68 Ark. 449; *Crosser* v. *Crosser,* 121 Ark. 64; *Less* v. *Less,* 131 Ark. 232. A wrongful appropriation of funds of the estate belonging to the creditors or heirs to the discharge of that part of the encumbrance to which the widow's dower was subject, would call for the application of the doctrine of subrogation so as to compel the widow to contribute her proportion to the discharge of the encumbrance. *Salinger* v. *Black, supra.* It appears, however, that the executor collected the rents and discharged the mortgage out of the same, with the acquiescence of all of the parties in interest, using the rent derived from the mortgaged property *pro tanto* and the balance out of the rents of other real estate. This having been done with the consent of the parties, it is too late now for either to ask for a change of the rule and an accounting of the funds so applied. The only fair and equitable method to dispose of this feature of the controversy is to treat the net amount of the rents after payment of the mortgage debts as the proper amount for distribution and to dispose of it in accordance with the terms of the statute regulating the widow's dower.

(5) Mayo owned a small piece of real estate situated in the State of Ohio, which was formerly his home when he lived in that State. Its value is shown to be about $1,000 with rental value of $6.50 per month. Since the death of Mayo the property has been occupied by one of the collateral heirs. Of course, it is conceded that the

widow's dower in land situated in the State of Ohio is fixed by the laws of that State, but it is contended by counsel for the widow that the rent which has accrued since the death of the testator should be treated as part of the personal estate which is subject to distribution here at the domicile of the testator. It is shown under the laws of the State of Ohio to a widow is not entitled to rents out of real estate of which she is to be endowed until after a petition for assignment of dower has been filed in the court of proper jurisdiction. *Fast* v. *Umbaugh*, 22 Ohio Cir. Ct. R. 409. It results from that state of the law that the widow can claim nothing here out of the rents of the property in Ohio. Any other remedy she may have for assignment of her dower in the Ohio real estate must be pursued there and must be controlled by the laws of that State.

(6)    There is another item in the report of the executor which forms a part of the controversy in this case. It is the item of $573.56, shown to be the profits resulting from the operation of the business of the decedent by the executor. The statement in the report of the executor is ambiguous in that the item is referred to as gross profits, but the executor charges itself with the full amount which is tantamount to treating it as the net profits of the business. The rights of the widow in the personal estate of the deceased husband are fixed by the amount of the property as it stands at the date of the death of the husband, but there was no authority for the personal representative to operate the business, and he did so at his peril. However, when a profit is derived the trustee must account for it, and the widow is entitled to her proportion for the reason that the earned profit is treated as a portion of the estate as it existed at the time of the death of the testator. The widow is entitled to her proportionate part of that item, treating it as personal property belonging to the estate.

It is believed that this discussion is sufficient to enable the chancellor to allot the dower of the widow without further controversy as to her rights. The decree is,

therefore, reversed and the cause remanded for further proceedings in accordance with this opinion.

McCULLOCH, C. J., (on motion to modify opinion). Learned counsel for defendants contend that the conclusions of law announced in the original opinion were based on a misconception of the facts concerning the quantity of the property of the estate necessary to pay the debts, and of the rulings of the chancellor as to the law applicable thereto, and they express the fear that if the opinion stands as written it will lead to the conclusion that we mean to hold that the shortage in the widow's allowance of dower out of the personalty should be made up from the realty.

(7-8) We do not think that the opinion can be so construed, even if it be found that the facts are not as assumed, but, to allay the fears of counsel, we say that the chancellor was correct in holding that under the statute the widow's dower "is divided into two classes for the purpose of estimating dower, real and personal," and that the dower "is to be set apart in each class separately and no deficiency in one class can be made up from the other."

Answering the further inquiry of counsel, we say that in case that two-thirds of the personal property is insufficient to pay the debts, the same rule of apportionment of the rents applies as that stated in the opinion with reference to the personalty, except as to the deduction of the amount used in discharge of the mortgage, which constituted an encumbrance on the real estate; that is to say, the widow is entitled to one-third of the rents as against creditors, and one-half as against collateral heirs. What we meant to hold concerning the widow's share of the rents is that she would not have been entitled to dower out of the mortgaged property free of the encumbrance, if the encumbrance had not been discharged by the executor out of the rents, and that the rents used in discharge of the encumbrance should, under the facts

of this case as decided in the original opinion, be deducted from the gross amount, and dower assigned out of the balance—one-third as against creditors and one-half as against heirs.

SMITH, J., (dissenting).   In my opinion the court below properly construed the section of the Digest quoted in the majority opinion, section 2709, Kirby's Digest. This construction was substantially that the widow shall receive one-third of the personal property, and one-third of the real estate, and the creditors two-thirds until all debts are paid, and whatever of said personal or real property remains after payment of debts and dower in this manner shall belong, one-half to the widow and one-half to the collateral heirs.   The section of the statute under review is a dower statute.   The court said of it in the case of *McGuire* v. *Cook*, 98 Ark. 118: ''The interest which the widow possesses in the lands of her deceased husband is known as dower. * * * By this enactment we do not think the Legislature intended to create in the widow an estate in her deceased husband's lands different in any essential from the estate of dower known at the common law, except as therein expressly provided.'' And, in the case of *Jameson* v. *Davis*, 124 Ark. 402, the court said of this same section: ''While the statute enlarges the quantity and extends the duration of the estate, it in no manner changes the character of the estate nor the method by which it is set apart or allotted to the widow.''

By the common law there was no dower in the personal estate.   Dower in the personalty was given in this State by the statute on the subject approved February 28, 1838.   Section 21 of this act reads as follows: ''If a husband die, leaving a widow and no children, such widow shall be endowed of one-half of the real estate, and also one-half of the slaves of which said husband died seized, and one-half of the personal estate, absolutely and in her own right.''   Revised Statutes, chap. 52, p. 339.

This statute was construed by this court in the case of *Brown* v. *Collins*, 14 Ark. 421, where the court said:

"The question presented is whether or not, under the provision of the twenty-first section of our statute of dower (Dig., ch. 59, p. 448), when the husband dies, leaving a widow and no children, she takes one-half of the real estate, and one-half of the slaves of which he died seized, absolutely and in her own right, or only a dower estate in them, for the full term of her natural life; and we think it perfectly clear, when this section is considered in connection with the other provisions of the dower law, that she takes only a dower interest and estate for life.

"It is manifest that if she takes the slaves, absolutely and in her own right, she takes the real estate in the same way, and this would be in conflict with the policy of our statute of descents, of preserving the inheritance in the blood of the first purchaser, subject to dower in the common law sense of that term; as to the duration of the estate. It is only when there are no kindred, either paternal or maternal, capable of inheriting, and next before it escheats, that real estate descends from the husband to the wife, or vice versa (Dig., ch. 56, § 7). It would be easy to show, by enlarging upon this view of the subject, that if the widow could take one-half of the land absolutely, and not a dower estate in it for life only, the Legislature had really achieved much less than half they evidently designed by the system of descents they set on foot."

This opinion was delivered at the January term, 1854, of the court, and no change was made in this section except by the digestor to conform it to the Thirteenth Amendment to the Federal Constitution, abolishing slavery, until the passage of the act of March 24, 1891, which became, and is, section 2709 of Kirby's Digest.

In determining the meaning of this section, it is proper and necessary to consider the state of the law at the time of its enactment. In the case of Brown v. Collins, supra, the court held that "the term dower has a common law meaning, importing an estate for life, not to be controlled without a contrary intention clearly manifested by the statute." This court said of this statute

in the case of *Arbaugh* v. *West,* 127 Ark. 105, that "the purpose of the statute was to enlarge the widow's dower by the substitution of a fee simple estate for an estate for life." But in doing so, the Legislature also manifested its purpose and intention to take care of the interest of creditors and collateral heirs. This fee simple estate was given only when the estate was a new acquisition, evidently upon the theory that the wife had contributed to the accumulation of an estate of that character; but the rights of creditors remained unchanged against estates even of that character; and, it appears to me that a consideration of the law of dower, and of our legislation on the subject, as well as the language of the section quoted, make it certain that the collateral heirs were not wholly left out of the legislative consideration except in certain conditions. The construction of this statute given by the majority makes it mean that the widow shall have, in all cases where the indebtedness is not greater than one-half the value of the entire estate, a full one-half as dower, and that only in cases where the indebtedness is less than one-half of the value of the entire estate shall the collateral heirs receive any portion thereof. An illustration is given in the brief which shows the injustice of this construction. A. dies, leaving an estate worth $50,-000 and no debts. His wife takes $25,000, and his collateral heirs take $25,000. B. dies, leaving an estate worth $100,000, and leaves $50.000 in debts. B.'s widow takes the entire net value of this estate, or $50,000, and the creditors take the other $50,000, and the collateral heirs take nothing. Both estates have the same net value, and the widow, in one case, takes one-half of this net value, and in the other case the entire net value. If A. before his death should buy $50,000 worth of property, and should owe the entire purchase price at his death, the transaction would result in giving his widow the entire net value of his estate. I think the Legislature intended no such result.

I think it less likely that this result would have been reached had the distribution of this estate been viewed

prospectively, instead of retrospectively. As a matter of fact, the widow, creditors and collateral heirs stood by for a long number of years, and wisely so, while an efficient administrator was collecting enough rents to pay the debts and preserve the real estate for the distributees. But not many estates are so administered, or can be. The statute contemplates an early closing of the administration, and to that end has reduced to one year the time within which claims may be probated against the estate after letters of administration have been issued. Act of May 28, 1907, page 1170, Acts 1907.

To correctly interpret this statute we must view it prospectively. We must have the perspective of the administrator who has just entered upon the discharge of his duties. This administrator would have had in view that the widow has certain specific statutory allowances. He would also have it in view that she took dower in specific property, both real and personal. *Johnson* v. *Johnson,* 92 Ark. 292; *Ex parte Grooms,* 102 Ark. 322. That this dower right vests in the widow immediately on the death of her husband, and descends to her heirs. *Barton* v. *Wilson,* 116 Ark. 400. And that no adjudication of a court is necessary to give her this right. *Kendall* v. *Crenshaw,* 116 Ark. 427; *Barton* v. *Wilson, supra.* And while, as said in *Arbaugh* v. *West, supra,* the widow does not take any property in severalty until it is assigned, still the estate itself vests in her immediately upon the husband's death.

It was not intended that the dower of the widow should be made to depend upon the solvency or insolvency of the estate. That fact may not be determined until the administration is completely closed. Her share depends upon the existence of debts, and the amount of them, whether the estate be solvent or insolvent. She has a third in any event, but the creditors, few or many, large or small, have the right to say that, where the widow is paid one dollar, they shall be paid two, and that this process shall continue until all the debts are paid; and then, if any balance remains, that sum is divided equally be-

tween the widow and the collateral heirs. These heirs get nothing until the debts are paid; but, when they are paid, and in the manner in which I think the statute provides that they shall be paid, they are entitled to one-half of the sum then remaining. The court below so construed the statute, and I think the decree in that respect should be affirmed. I, therefore, dissent from the opinion of the majority.