BRACK *v.* COBURN.

4-7941                                    196 S. W. 2d 230

Opinion delivered July 1, 1946.

Rehearing denied September 30, 1946.

*Horace Chamberlin,* for appellant.

*Chas. B. Thweatt* and *Cooper Thweatt,* for appellee.

ROBINS, J. The controversy presented by this appeal arose from an application made to the lower court by

appellant, as widow of Milton G. Brack, deceased, for allotment of her dower. Appellant makes no objection to any part of the order made on her petition except that part by which the court, treating as real estate the one-third interest of Milton G. Brack in two long-term leases, in the one instance made by Brack's father as lessor, and inherited by appellant's husband, and in the other made by Brack himself as lessor of inherited land, by which two different parcels of real estate in Little Rock were demised to two different corporations as lessees, one of these leases being for a term of 99 years and the other for a term of 30 years, allotted to appellant as dower an undivided one-half interest for her life only in the interest of her deceased husband in these leases and in the reversion retained therein. Appellant, insisting that these leases should be treated as personal property and that she should be awarded an absolute undivided one-half interest as her dower in the rents payable thereunder on the share of her husband, has appealed from the lower court's order.

There is no controversy whatever as to the essential facts in this case, which are as follows: Milton G. Brack died intestate on July 29, 1945, leaving his widow, the appellant, and no child or other descendant surviving him. His collateral heirs are the appellees, who are the children of a deceased brother of said Milton G. Brack. Milton G. Brack had inherited from his father an undivided one-third interest in lot 12 and the north 10 feet of lot 11, of block 74, original city of Little Rock, subject to a lease of said property for 99 years to the State Bank Building Company, which was later assigned to the Boyle Realty Company, executed effective as of January 1, 1909, by Milton G. Brack's father and other owners thereof, and of which lease Milton G. Brack inherited an undivided one-third interest. Said Milton G. Brack was the owner by inheritance of an undivided one-third interest in the south 40 feet of lot 11, block 74, original city of Little Rock, which said Milton G. Brack had, along with the other owners, leased to the Capital Realty Company effective as of June 1, 1938, which lease was later assigned

to the M. M. Cohn Company, for a term of 30 years. Milton G. Brack also owned (in addition to the one-third interest inherited), by purchase made by him, an undivided one-sixth interest in this last-mentioned tract, but there is no controversy as to the rights of the parties as to this interest. All debts owed by Milton G. Brack have been paid. It is agreed that the estate of Milton G. Brack in both properties, extent of dower in which is involved herein, was an ancestral one.

The statutes applicable here are §§ 4420 and 4421, Pope's Digest, as follows:

"Section 4420. A widow shall be entitled, as part of her dower, absolutely and in her own right, to one-third part of the personal estate, including cash on hand, bonds, bills, notes, book accounts and evidences of debt, whereof the husband died seized or possessed.

"Section 4421. If a husband die, leaving a widow and no children, such widow shall be endowed in fee simple of one-half of the real estate of which such husband died seized, where said estate is a new acquisition and not an ancestral estate; and one-half of the personal estate, absolutely and in her own right, as against collateral heirs; but, as against creditors, she shall be endowed with one-third of the real estate in fee simple if a new acquisition and not ancestral, and of one-third of the personal property absolutely, Provided, if the real estate of the husband be an ancestral estate she shall be endowed in a life estate of one-half of said estate as against collateral heirs, and one-third as against creditors."

Appellant insists that the leases were evidences of debts, because they both contained the promise of the lessee to pay a stipulated annual rental—$12,000 payable in quarterly installments under one lease, and, under the other, $14,334 for the first year, $17,200 per year for the next nine years, $18,000 per year for the next ten years, and $19,000 per year for the last ten years, payable in equal monthly installments. Appellant argues that, since these leases were evidences of debt, and therefore per-

sonal property, she was entitled, under the provisions of § 4421, Pope's Digest, to one-half thereof "absolutely and in her own right, as against collateral heirs."

To support her contention that the interest of appellant's deceased husband in the leases was personal property, and not real estate as the lower court held, appellant cites certain language used by this court in its opinion in the case of *Stull* v. *Graham,* 60 Ark. 461, 31 S. W. 46, and the reference to this language in the case of *Mayo* v. *Arkansas Valley Trust Company,* 132 Ark. 64, 200 S. W. 505.

In the Stull case, *supra,* it appeared that Stull, the decedent, had rented to Swepston the farm land appurtenant to his (Stull's) home for the year 1892 for a rental of $3,274, evidenced by a promissory note. Stull died February 29, 1892, and, the widow's dower not having been assigned to her by the heir during the year in which her husband died, Mrs. Stull claimed that under § 2537 of Sandels & Hill's Digest (§ 4416, Pope's Digest) she was entitled to the use of the "chief dwelling house of her late husband, together with the farm thereto attached," and that therefore she was entitled to all of the note executed by Swepston to Stull and representing the rental for the year 1892. This court decided against her contention that the entire note should be awarded to her, but held that she was entitled to dower therein "as in the other personalty." The question as to whether the rent note was chattel or real property was not an issue at all in that case. She had lived beyond the end of the year for which the property had been rented, and until long after the note matured. Hence the extent of her dower interest therein would have been the same, whether the rent was treated as a chattel or as incidental to the real estate. Therefore this language in the Stull case was in reality mere *obiter dicta,* and, though it was referred to in the case of *Mayo* v. *Arkansas Valley Trust Company,* 132 Ark. 64, 200 S. W. 505, a determination of the character of rentals on land of a decedent accruing after his death was not necessary to the decision in that case. In fact the court in the Mayo case indicated an unwill-

ingness to make any declaration on the question now under consideration, saying in the opinion: "In view of the fact that the widow's rights are not affected by the determination of that question, she being given the same proportion under our statute whether the rent be treated as personalty or as a part of the realty, it is immaterial to decide that question." In the reference made in the opinion in the Mayo case to the Stull case it is somewhat inaccurately stated that it had been held in the Stull case that rents accruing after the death of the owner from a lease *for a term of years* (italics ours) is personal property which goes to the representative of the decedent. A careful examination of the opinion in the Stull case discloses that there was no lease of lands for a term of years, the lease there involved being for only one year.

There is a very material difference between the property rights involved in the Stull case and those under consideration here. In the Stull case, the decedent had rented out his farm land for one year and had taken a promissory note for the rent for that year. The rent note in dispute there conferred no right on the holder thereof except the privilege of collecting the rent—it carried with it no sort of interest or title in the land or right pertaining thereto.

But, under the leases involved here, the lessors have the right of re-entry not only at the end of the respective terms fixed in the leases, but the leases confer on the lessors, under certain conditions, the authority to take possession of the property before the expiration of the respective terms thereof. Both of these leases contained provisions to the effect that, if the lessees failed to pay the rent promptly, or failed to construct the kind of buildings required in the lease to be erected by lessees, or failed to pay the taxes when due, the lessors might immediately take possession of the property, in which event the lessors would thereupon own, free from any claim of the lessees, the modern and costly buildings on the demised tracts. This power of the lessors to end the leases and to take over the buildings constructed on the lots by lessees is a very valuable and important one. The

rights of the lessors, during the terms of the leases here involved, is something much more than a mere authority to collect rent from the lessees; and this right of the lessors to cancel the lease and become the owners, without cost to them, of these buildings certainly partakes of the nature of an interest in realty.

It is also urged by appellant, as a further reason why the interest of her deceased husband in the leases must be held to be personal property, that, under the statute, a widow may be endowed of only real estate of which her husband died *seized and possessed,* and she argues that her husband was not seized and possessed of this property when he died, because the actual possession thereof had been transferred by the leases to the lessees. In the first place, it may be pointed out that this position of appellant is somewhat inconsistent, because she is asking not only that she be given dower in the rentals, but she also demands her dower in the reversionary interest of her deceased husband, in spite of the fact that she contends that her husband was not ''seized'' of the property at the time of his death.

A complete answer to this contention of appellant is that her husband was seized of this property when he died, because his tenant was in possession thereof, and, under the law, the possession of the tenant is the possession of the landlord. ''An estate for years or other mere chattel interest interposes no impediment to a title of dower, because such an interest does not interfere with the seizin, but preserves it, possession under the chattel interest being regarded as the possession of the owner of the fee.'' 17 Am. Jur. 669. The ''chattel interest'' referred to in this citation is, of course, the interest of the tenant or lessee, which is generally held to be a chattel rather than an interest in real estate. *Lenow* v. *Fones,* 48 Ark. 557, 4 S. W. 54.

''The grant by a tenant in fee of a term of years in no way affects the seizin of the grantor, whose interest is then freehold in possession subject to the term.'' 31 C. J. S. 126.

In the case of *Sykes* v. *Sykes,* 49 Miss. 190, And. 21 A. L. R. 1080, the court said: " 'At the common law, seizin in law was sufficient to sustain the claim of dower. We do not suppose that any special significance is to be attached to the word "possessed" in the clause of the statute, "lands . . . tenements . . . of which the husband died seized and possessed.'' The statute does not mean that there shall be an actual occupancy by the husband in addition to the seizin. The statute is satisfied if the husband died seized of an estate of inheritance, although at the time an outstanding term might be in a tenant, and he in actual possession.' "

To the same effect are holdings in these cases: *Bates* v. *Bates* (1697), 1 Ld. Raym. 326, 91 Eng. Reprint, 1113; *Sheaf* v. *Cave* (1857), 24 Beav. 259, 53 Eng. Reprint, 357; *Boyd* v. *Hunter* (1870), 44 Ala. 705; *Sykes* v. *Sykes* (1873), 49 Miss. 190; *Weir* v. *Tate* (1845), 39 N. C. (4 Ired. Eq.) 264; *Houston* v. *Smith* (1883), 88 N. C. 312; *Prasser's Will* (1909), 140 Wis. 92, 121 N. W. 643.

An interest such as that owned by Milton G. Brack in the two leases involved herein is an estate in land and not a chattel interest. If it were a chattel interest, title thereto would, on the death of the lessor, pass to the administrator; but the authorities are practically unanimous to the effect that such an interest descends to the heirs, subject to the statutory right of the administrator to hold same for the purpose of paying debts of the estate.

In *Phillips* v. *Grubbs,* 112 Ark. 562, 167 S. W. 101, we said: "The decree ought, however, to be modified with respect to the order on Grubbs to pay the rent to Frank A. Wright as executor of the estate of Mrs. Carr. It does not appear that the lands or the rents and profits thereof are necessary for the payment of debts; therefore, the heirs are entitled to collect the same."

"At common law, and in the absence of the circumstances or contingencies contemplated by . . . testamentary or statutory provisions, the personal representative has no authority or duty to collect rents and profits

accruing after the death of his decedent, the right thereto being in the heir or devisee of the realty.'' 33 C. J. S. 1270. See, also, 17 Am. Jur. 678; 32 Am. Jur. 375.

In the case of *Fay* v. *Holloran* (N. Y.), 35 Barb. 295, the Supreme Court of New York said: "It has been often decided that if the landlord dies before the rent becomes due, it goes to the heir, as incident to the reversion."

Almost the same question as that involved here was decided by the Supreme Court of Tennessee in the case of *Combs* v. *Combs,* 131 Tenn. 66, 173 S. W. 441. In that case a widow, who rejected the provision made for her in her deceased husband's will, sought to have set apart to her, as a part of her allowance, notes executed to the deceased for the rent of real estate devised to his children, which notes did not mature until after the death of the husband. The court, holding that the widow could not obtain such allowance, said: "A dissenting widow's allowance may be set apart to her out of any personal assets of her deceased husband's estate. Code (Shannon), § 4020. But by such personal 'assets' is meant those which go into the hands of the administrator or executor for the payment of debts. *Agee* v. *Saunders,* 127 Tenn. 680, 157 S. W. 64, 46 L. R. A., N. S., 788. By the rule of the common law rents under a lease executed by the owner of the fee, so accruing after death, cannot be said to be the goods, chattels, rights, or credits of the deceased, since they are incident to the reversion, and vest in the heir or devisee. In this state, as well as in many other states, this rule is in force; it being said in *Smith* v. *Thomas,* 14 Lea (82 Tenn.) 324, that there is nothing in our statutes changing the rights of the heir or devisee. *Combs* v. *Young,* 4 Yerg. (12 Tenn.) 218, 231, 26 Am. Dec. 225; *Rowan* v. *Riley,* 6 Baxt. (65 Tenn.) 67; note to *Walsh* v. *Packard,* 40 L. R. A. 321. . . . It is pointed out by the counsel of the widow that all of the above cases involved rents to accrue under, and represented only by, the rental contract, or by way of account; and it is argued that in the pending case notes were taken for such rental sums, that the rents were thus placed in negotiable form, and that from this fact we should imply a severance of the rents

from the reversion. By the common law rent was capable of being separated or severed from the reversion by the owner of the land granting or devising the land and reserving the rent, or by his granting or transferring the rent and retaining the reversion. But the act which severs must be that of such owner, indicating a purpose to sever."

In Scribner on Dower (Second Edition), vol. 2, p. 776, it is said: "The widow, when endowed of lands upon which there is an existing lease for years, becomes the reversioner, and is entitled to the rent, or, as the case may be, to a proportion of it."

The lower court's decree awarding the appellant dower in the interest of her husband in the leases and in the reversions as in real estate is correct; and it is accordingly affirmed.